FILED 1/31/2017 12:39:41 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

ANGELA GOODMAN

     Plaintiff,

vs.

THE HOUSING AUTHORITY OF DEKALB
COUNTY and EUGENE WALKER, in his
official capacity as its Executive Director,

     Defendants.

Civil Action
Case Number  17CV1816

## COMPLAINT

### PRELIMINARY STATEMENT

1.    Plaintiff is a low-income resident of DeKalb County and a participant in the Housing Choice Voucher Program (also known as the "Section 8 Program"), which provides continued rental subsidies to very low income persons pursuant to Section 8 of the U.S. Housing Act of 1937 (hereinafter the "Act"), 42 U.S.C. § 1437f.

2.    Plaintiff and her family have been wrongfully terminated from the Section 8 Program by the Defendant Housing Authority of DeKalb County ("HADC"), without good cause under the Act and implementing regulations, and without a fair hearing and other procedural safeguards required by the Act and regulations, and guaranteed by the Fourteenth Amendment to the United States Constitution, Article I, §1, ¶1 of the Georgia State Constitution and the Defendants' own policies.

3.    Plaintiff and her family are effectively homeless. She was forced to move from her home on January 19, 2016 and is staying in a one-room weekly hotel with her entire family of nine. She cannot afford to continue paying the weekly hotel rates. She seeks declaratory, injunctive and monetary relief.

### JURISDICTION AND VENUE

4.    This Court has jurisdiction over this matter pursuant to Ga. Const. Art. VI, § IV, Para. I and O.C.G.A. § 15-6-8. This Court is charged with conducting a *de novo* review of HADC's actions.

5.    Venue is proper in this county because Defendants' principal place of business is in DeKalb County.

-1-

TJ

## PARTIES

6.    The Plaintiff is head of household for a qualified family participating in the Section 8 Housing Choice Voucher Program through the Housing Authority of DeKalb County; she has been notified that her assistance is being terminated effective January 31, 2017. She has eight children on her voucher, seven of whom are minors; the eighth is a disabled adult.

7.    Defendant Housing Authority of DeKalb County (hereinafter the "Housing Authority" or "HADC") is an entity which administers the federal Section 8 Housing Choice Voucher Program in Decatur, Georgia. The Housing Authority maintains its principal place of business at 750 Commerce Drive, Decatur, GA 30030.

8.    Defendant Eugene Walker, the Executive Director of the Housing Authority of DeKalb County, Georgia is responsible for the HADC's daily operation, including the implementation of its policies. He is charged with implementing the Section 8 Housing Choice Voucher Program in a manner that is consistent with federal and state laws and regulations.

## STATUTORY AND REGULATORY FRAMEWORK

9.    The Section 8 Housing Choice Voucher Program is a federal program in which the U.S. Department of Housing and Urban Development pays rental subsidies so that approved low income and very low income families can afford decent, safe, and sanitary housing. This program is authorized by Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. §1437f(b)(1) and 24 C.F.R. §982.1.

10.   Under the Section 8 Housing Choice Voucher Program,

   a.    Families select and rent units that meet program housing quality and rent reasonableness standards. 24 C.F.R. § 982.1(a)(2).

   b.    The Public Housing Authority (hereinafter, "PHA") then approves a family's unit and tenancy. 24 C.F.R. § 982.1(b)(2).

   c.    The PHA then contracts with the owner to make rent subsidy payments on behalf of the family. *Id.*

11.   Units that receive assistance under the Section 8 Housing Choice Voucher Program are required to pass annual and any interim inspections to ensure they meet Housing Quality Standards ("HQS"). 24 C.F.R. § 982.401. HQS requires, in relevant part:

   a.    That the exterior doors of the unit be lockable. 24 C.F.R. § 982.401(d)(2)(iv).

   b.    That each floor of the unit contains a working smoke detector. 24 C.F.R. § 982.401(n)(1).

-2-

## Grounds for Termination of Assistance

12.    A PHA may terminate a participating family's Section 8 assistance if the family violates any of its obligations under the Section 8 Program, which are set out in 24 C.F.R. § 982.551. *See* 24 CFR § 982.552(c)(1). In relevant part, the PHA may terminate assistance for the following reasons:

   a.    Any member of the household or guest damages the dwelling unit or premises (damages beyond ordinary wear and tear) (24 CFR § 982.404(b)(iii));

   b.    The family does not allow the PHA to inspect the unit at reasonable times and after reasonable notice (24 C.F.R. § 982.551(d)); or,

   c.    The family causes a breach of the HSQ (24 C.F.R. § 982.404(b)(iii)(3)).

13.    In determining whether to terminate assistance because of conduct by family members, the PHA may consider circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of termination on other family members who were not involved in the conduct. 24 CFR §982.552(c)(2)(i).

14.    The PHA may require culpable family members to vacate the unit and permit other members of a participant family to continue receiving assistance. 24 C.F.R. § 982.552(c)(2)(ii).

15.    The PHA cannot terminate a family's assistance because of a *de minimus*, or harmless, violation. *See Hassan v. Dakota Cmty. Dev. Agency*, 2009 LEXIS 291 *10 (Minn. Ct. App. Mar. 24, 2009); *Sicardo v. Smith*, 49 A.D.3d 761, 762 (N.Y. App. Div. 2008) (a PHA's decision to terminate assistance for a minor violation imposes a penalty disproportionate to the conduct).

## Reasonable Accommodations for Disabilities

16.    The PHA must comply with federal law. A PHA must certify annually to HUD that it will conform with Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d *et seq.*), the Fair Housing Act (42 U.S.C. §§ 3601 *et seq.*; hereafter "FHA"), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794; hereafter "RA"), and Title II of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. §§ 12131 *et seq.*; hereafter "ADA"), and "will affirmatively further fair housing." 42 U.S.C. §§ 1437c-1(b)(3)(B), 1437c-1(d)(16).

17.    A PHA may not "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability of that person." 42 U.S.C. § 3604 (FHA prohibits discrimination in public and private housing); *see also* 42 U.S.C. § 12101 *et seq.* (ADA prohibits discrimination in state and local government agencies); 29 U.S.C. §

794(a) (RA prohibits discrimination in programs receiving federal assistance).

18. A PHA cannot refuse to make a reasonable accommodation in housing rules and policies if that accommodation is necessary to afford a tenant equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3) (FHA); 28 C.F.R. § 35.130(b)(7) (ADA); 24 C.F.R. § 8.2 (RA).

## **Procedures for Termination of Assistance**

19. If the PHA wishes to terminate assistance on behalf of a participating family, it must give the family notice and the opportunity for an informal hearing before termination of housing assistance. 24 C.F.R. § 982.555 (a)(1)(v).

20. Adoption of Written Hearing Procedures. The PHA's administrative plan must state the PHA's procedures for conducting informal hearings for participants. 24 C.F.R. § 982.555(e). The HADC has adopted such procedures, which are found at pages 16-11 to 16-18 of its Administrative Plan. (Copy attached as Exhibit A.)

21. Notice. A notice to terminate assistance must contain a brief statement of the reasons for the decision and notification of the family's right to an informal hearing. 24 C.F.R. § 982.555 (c)(2)(i) and (ii).

22. The family *must* be given the opportunity to present evidence and to question any witnesses. 24 C.F.R. § 982.555(e)(5) (emphasis added).

23. Hearsay. Although the rules of evidence are not strictly applied in the informal hearings, "there are due process limits on the extent to which an adverse [decision] may be based on hearsay evidence." *Basco v Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008).

24. The HADC's policy allows hearsay evidence to be admitted, but it significantly limits its consideration as follows: "hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision." Administrative Plan, p. 16-16.

25. Burden of Proof. The PHA bears the burden of persuasion at the informal hearing, and must prove by a preponderance of the evidence that a family's Section 8 housing assistance should be terminated for the reasons stated in the PHA's termination notice. *Basco*, 514 F.3d at 1183; 24 C.F.R. § 982.555(e)(6).

26. Hearing Decision. "The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6).

-4-

## FACTS

27. Plaintiff ANGELA GOODMAN and her eight children (seven of whom are minors and one who is disabled) are currently homeless directly because of HADC's unlawful administrative procedures and its failure to follow the policies it adopted in its Administrative Plan. *See* Angela Goodman Affidavit. (Copy attached as Exhibit B.)

28. On September 13, 2016, HADC notified Ms. Goodman that it was proposing to terminate her family's Section 8 assistance because she failed to allow the PHA to inspect the unit and because her family damaged the unit beyond normal wear and tear. (Copy attached as Exhibit C.)

29. Ms. Goodman timely requested a hearing, and she noted in her request that she missed the emergency re-inspection because her son with mental health problems was in the hospital. (Copy attached as Exhibit D.)

30. A hearing was held on November 3, 2016.

    a. At the hearing, the only evidence offered by HADC was the inspection notices, Ms. Goodman's lease, Ms. Goodman's voucher, and a list of the Family Obligations.

    b. The only witness testifying on behalf of HADC was Kentrye Cornelious, Compliance Officer for the Section 8 Program, who did not claim to have any first-hand knowledge of the alleged violations, and who merely tendered the inspection reports into evidence.

    c. Ms. Goodman testified that she completed all the repairs on the initial inspection list that were her responsibility.

    d. Ms. Goodman testified that she was not responsible for the broken kitchen drawer, and that she had complained to the landlord about it in the past. She testified that the landlord tried to fix it, but was unable to do so. She testified that she told her family not to use the drawer, since it did not work properly.

    e. Ms. Goodman testified that she replaced the batteries in all the smoke detectors in the house. Despite replacing the batteries, at least one of the smoke detectors failed to work. She testified that she didn't believe it was her responsibility to fix a broken smoke detector.

    f. Ms. Goodman testified that she did not cause the door glass to crack. She testified that it was cracked when she moved in, but the crack became bigger over time. She testified that she did not believe it was her responsibility to fix the cracked door glass.

    g. Ms. Goodman testified that she has had many issues with her landlord refusing or

-5-

failing to make repairs. She complained to the landlord and to HADC on several occasions.

h.      Ms. Goodman testified that she missed the emergency follow-up inspection because her son was in the hospital at the time. However, the follow-up inspection was rescheduled and completed on September 30, 2016.

31.     The hearing officer issued a decision on November 17, 2016 upholding the HADC's decision to terminate the family's assistance. (Copy attached as Exhibit E.)

32.     The HADC notice states that the last payment to Ms. Goodman's landlord would be on January 1, 2017, which means that HADC did not intend to send any housing assistance payments to Ms. Goodman's landlord as of February 1, 2017. (Copy attached as Exhibit F.)

33.     On November 15, 2016, Ms. Goodman's landlord filed an eviction (dispossessory) against her because HADC put the property into abatement when the landlord failed to make repairs. Ms. Goodman and her landlord worked out a consent agreement. She agreed to move out on January 19, 2017 voluntarily, and the landlord agreed to dismiss the dispossessory case against her.

34.     Ms. Goodman cannot afford to pay market rent. Since she moved out of the unit on January 19, 2017, she has been staying in a one-room weekly hotel with her entire family. Therefore, she and her children are effectively homeless because HADC refuses to re-issue her voucher.

35.     Ms. Goodman cannot afford to continue staying at the weekly hotel.

**FIRST CLAIM FOR RELIEF**
**Violations of Section 8 Statute and Regulations**
**and HADC Administrative Plan**

36.     Defendants' decision to terminate Plaintiff's Section 8 Housing Choice Voucher on the basis that she damaged the unit beyond normal wear and tear rests solely on unreliable hearsay evidence.

37.     In terminating Plaintiff's Section 8 voucher, Defendants have violated 24 C.F.R. § 982.555(e)(5) and (6) by failing to provide Plaintiff the right to cross-examine persons who supplied information upon which the decision was grounded, and by improperly shifting the burden of proof onto the recipient.

38.     In terminating Plaintiff's Section 8 voucher based solely on hearsay evidence, Defendants have violated their own formally promulgated Administrative Plan, which forbids using hearsay evidence alone as the sole basis for the decision.

-6-

## SECOND CLAIM FOR RELIEF
### Violation of 42 USC 1983: Due Process under U.S. Constitution

39. Defendants' decision to ignore its own Administrative Plan and terminate Plaintiff's Section 8 Housing Choice Voucher is a denial of due process which rests solely on unreliable hearsay evidence.

40. Defendants have also violated 42 U.S.C. § 1983 with respect to Plaintiff's due process rights secured by the Fourteenth Amendment of the U.S. Constitution, by failing to afford her the opportunity to confront and cross-examine persons who supplied information upon which the HADC's decision is grounded, and by inappropriately shifting the burden of proof onto the recipient.

41. Plaintiff has been economically and irreparably harmed by Defendants' actions and is entitled to injunctive and declaratory relief and monetary damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### Violation of Due Process Clause of the Georgia Constitution

42. Defendants' decision to terminate Plaintiff's Section 8 voucher violates its own Administrative Plan and rests solely on unreliable hearsay evidence.

43. In terminating Plaintiff's voucher, Defendants have violated Article I, §1, ¶1 of the Constitution of the State of Georgia, by failing to provide Plaintiffs the opportunity to cross-examine persons who supplied information upon which their decision is grounded, and by improperly shifting the burden of proof onto the recipients.

44. Plaintiff has been irreparably harmed by Defendants' actions and is entitled to declaratory and injunctive relief.

## FOURTH CLAIM FOR RELIEF
### Violations of 42 U.S.C. § 3601, 29 U.S.C. § 794, and 42 U.S.C. § 12131:
### Discrimination on the Basis of Disability

45. Defendants' decision to terminate Plaintiff's Section 8 voucher on the basis that she missed her first re-inspection meeting because of her son's disability violates the Fair Housing Act (42 U.S.C. §§ 3601 et seq.) (FHA), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) (RA), and Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12131 et seq.) (ADA), and its duty, under 42 U.S.C. §§ 1437c-1(b)(3)(B), 1437c-1(d)(16), to affirmatively further fair housing.

46. Plaintiff requested a reasonable accommodation for her son's disability when she asked not to be terminated for missing a single re-inspection appointment because her son was

-7-

in the hospital. In moving forward with the termination without considering Plaintiff's request, Defendants discriminated on the basis of a household member's disability.

47. Plaintiff has been economically and irreparably harmed by Defendants' actions and is entitled to injunctive and declaratory relief and monetary damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### Violations of 42 U.S.C. § 1437f and 24 C.F.R. §§ 982.552 and 982.553

48. Defendants, acting under color of state law, have violated 42 U.S.C. § 1437f and 24 C.F.R. §§ 982.552 and 982.553, as well as the HADC's Administrative Plan, by terminating Plaintiff's Section 8 voucher without good cause.

THEREFORE, Plaintiff asks that this Court grant the following relief:

a. Declare that the procedure used by the HADC for terminating Plaintiff from the Section 8 Housing Choice Voucher Program as described above was unlawful;

b. Declare Defendants' acts and omissions as described above to be in violation of the Fourteenth Amendment to the U.S. Constitution;

c. Declare Defendants' actions and omissions as described above to be in violation of Article I, §I, ¶1 of the Georgia Constitution;

d. Declare Defendants' acts and omissions as described above to be in violation of 42 U.S.C. § 1437f and its implementing provisions in 24 C.F.R. §§ 982.555(e)(5) & (6), 982.552 and 982.553;

e. Declare Defendants' acts and omissions as described above to be in violation of 42 U.S.C. § 3601, 29 U.S.C. § 794, and 42 U.S.C. § 12131;

f. Issue an appropriate preliminary and permanent injunction that Defendants must reinstate Plaintiff's Section 8 Housing Choice Voucher;

g. Issue an appropriate permanent injunction prohibiting the Defendants, their agents, employees, and all persons acting in concert or participation with any of them from acting as follows:

    i.) Terminating Plaintiff's Section 8 Housing Choice Voucher when the Plaintiff is not afforded the opportunity to confront and question witnesses relied on by the Defendants to make their termination decision;

    ii.) Terminating Plaintiff's Section 8 Housing Choice Voucher when the sole basis for its hearing officer's decision is hearsay evidence, in violation of the HADC

Administrative Plan;

h.      Award Plaintiff compensatory damages including the cost of relocation and the cost of rent as a result of her claims under 42 U.S.C. § 1983;

i.       Award Plaintiffs costs including reasonable attorney fees; and,

j.       Grant such other and further relief as the Court finds just and appropriate.


Respectfully submitted this 31st day of January, 2017.


*/s/ Lindsey M Siegel*
Lindsey M. Siegel (#730072)

*/s/ Jessica D. Felfoldi*
Jessica D. Felfoldi (#442858)

Attorneys for Plaintiff

Atlanta Legal Aid Society, Inc.
246 Sycamore Street, Suite 120
Decatur, GA 30030
Phone: (770) 817-7522 (Siegel)
           (770) 817-7529 (Felfoldi)
Fax:     (404) 377-2349
lmsiegel@atlantalegalaid.org
jdfelfoldi@atlantalegalaid.org





# TERMINATION OF ASSISTANCE AND TENANCY

HUD regulations specify the reasons for which a PHA can terminate a family's assistance, and the ways in which such terminations must take place. They also dictate the circumstances under which an owner may terminate the tenancy of an assisted family. This chapter presents the policies that govern voluntary and involuntary terminations of assistance, and termination of tenancy by the owner. It is presented in three parts:

**Part I: Grounds for Termination of Assistance.** This part discusses various reasons that a family's assistance may be terminated, including voluntary termination by the family, termination because the family no longer qualifies to receive subsidy, and termination by the PHA based on the family's behavior.

**Part II: Approach to Termination of Assistance.** This part describes the policies that govern how an involuntary termination takes place. It specifies the alternatives that the PHA may consider in lieu of termination, the criteria the PHA must use when deciding what action to take and the steps the PHA must take when terminating a family's assistance.

**Part III: Termination of Tenancy by the Owner.** This part presents the policies that govern the owner's right to terminate an assisted tenancy.

## PART I:
## GROUNDS FOR TERMINATION OF ASSISTANCE

### 12-I.A.    OVERVIEW

HUD <u>requires</u> the PHA to terminate assistance for certain offenses and when the family no longer requires assistance. HUD <u>permits</u> the PHA to terminate assistance for certain other actions family members take or fail to take. In addition, a family may decide to stop receiving HCV assistance at any time by notifying the PHA.

EXHIBIT

A



## 12-I.B.    FAMILY NO LONGER REQUIRES ASSISTANCE [24 CFR 982.455]

As a family's income increases, the amount of PHA subsidy goes down. If the amount of HCV assistance provided by the PHA drops to zero and remains at zero for 180 consecutive calendar days the family's assistance terminates automatically.

### HADC Policy

If a participating family receiving zero assistance experiences a change in circumstances that would cause the HAP payment to rise above zero, the family must notify the HADC of the changed circumstances and request an interim reexamination before the expiration of the 180-day period.

The HADC will not enter into a HAP contract with zero HAP.

## 12-I.C.    FAMILY CHOOSES TO TERMINATE ASSISTANCE

The family may request that the PHA terminate the family's assistance at any time.

### HADC Policy

The request to terminate assistance should be made in writing and signed by the head of household, spouse, or co-head. Before terminating the family's assistance, the HADC will follow the notice requirements in Section 12-4.F.

## 12-I.D.    MANDATORY TERMINATION OF ASSISTANCE

HUD requires the PHA to terminate assistance in the following circumstances.

### Eviction [24 CFR 982.552(b)(2), 24 CFR 5.2005(c)(1)]

The PHA must terminate assistance whenever a family is evicted from a unit assisted under the HCV Program for a serious or repeated violation of the lease. As discussed further in section 12-II.E, incidents of actual or threatened domestic violence, dating violence, or stalking may not be construed as serious or repeated violations of the lease by the victim or threatened victim of such violence or stalking.

### HADC Policy

A family will be considered evicted if the family moves after a legal eviction order has been issued, whether or not physical enforcement of the order was necessary.



If a family moves after the owner has given the family an eviction notice for serious or repeated lease violations but before a legal eviction order has been issued, termination of assistance is not mandatory. In such cases the HADC will determine whether the family has committed serious or repeated violations of the lease based on available evidence and may terminate assistance or take any of the alternative measures described in section 12-II.C. In making its decision, the HADC will consider the factors described in sections 12-II.D and 12-II.E. Upon consideration of such factors, the HADC may, on a case-by-case basis, choose not to terminate assistance.

*Serious and repeated lease violations* will include, but not be limited to, nonpayment of rent, disturbance of neighbors, destruction of property, or living or housekeeping habits that cause damage to the unit or premises and criminal activity. Generally, the criterion to be used will be whether or not the reason for the eviction was the fault of the tenant or guests.

## Failure to Provide Consent [24 CFR 982.552(b)(3)]

The PHA must terminate assistance if any family member fails to sign and submit any consent form they are required to sign for a reexamination. See Chapter 7 for a complete discussion of consent requirements.

## Failure to Document Citizenship [24 CFR 982.552(b)(4) and [24 CFR 5.514(c)]

The PHA must terminate assistance if (1) a family fails to submit required documentation within the required timeframe concerning any family member's citizenship or immigration status; (2) a family submits evidence of citizenship and eligible immigration status in a timely manner, but United States Citizenship and Immigration Services (USCIS) primary and secondary verification does not verify eligible immigration status of the family; or (3) a family member, as determined by the PHA, has knowingly permitted another individual who is not eligible for assistance to reside (on a permanent basis) in the unit.

For (3) above, such termination must be for a period of at least 24 months. This does not apply to ineligible noncitizens already in the household where the family's assistance has been prorated. See Chapter 7 for a complete discussion of documentation requirements.

## Failure to Disclose and Document Social Security Numbers [24 CFR 5.218(c), Notice PIH 2012-10]

The PHA must terminate assistance if a participant family fails to disclose the complete and accurate social security numbers of each household member and the documentation necessary to verify each social security number.



However, if the family is otherwise eligible for continued program assistance, and the PHA determines that the family's failure to meet the SSN disclosure and documentation requirements was due to circumstances that could not have been foreseen and were outside of the family's control, the PHA may defer the family's termination and provide the opportunity to comply with the requirement within a period not to exceed 90 calendar days from the date the PHA determined the family to be noncompliant.

---

### HADC Policy

The HADC will defer the family's termination and provide the family with the opportunity to comply with the requirement for a period of 90 calendar days for circumstances beyond the participant's control such as delayed processing of the SSN application by the SSA, natural disaster, fire, death in the family, or other emergency, if there is a reasonable likelihood that the participant will be able to disclose an SSN by the deadline.

---

## Methamphetamine Manufacture or Production [24 CFR 982.553(b)(1)(ii)]

The PHA must terminate assistance if any household member has ever been convicted of the manufacture or production of methamphetamine on the premises of federally-assisted housing.

## Failure of Students to Meet Ongoing Eligibility Requirements [24 CFR 982.552(b)(5) and FR 4/10/06]

If a student enrolled at an institution of higher education is under the age of 24, is not a veteran, is not married, does not have dependent children, is not residing with his/her parents in an HCV assisted household, and is not a person with disabilities receiving HCV assistance as of November 30, 2005, the PHA must the terminate the student's assistance if, at the time of reexamination, either the student's income or the income of the student's parents (if applicable) exceeds the applicable income limit.

If a participant household consists of both eligible and ineligible students, the eligible students shall not be terminated, but must be issued a voucher to move with continued assistance in accordance with program regulations and PHA policies, or must be given the opportunity to lease in place if the terminated ineligible student members elect to move out of the assisted unit.

## Death of the Sole Family Member [24 CFR 982.311(d) and Notice PIH 2010-9]

The PHA must immediately terminate program assistance for deceased single member households.



## 12-I.E.    MANDATORY POLICIES AND OTHER AUTHORIZED TERMINATIONS

### Mandatory Policies [24 CFR 982.553(b) and 982.551(l)]

HUD requires the PHA to establish policies that permit the PHA to terminate assistance if the PHA determines that:

- Any household member is currently engaged in any illegal use of a drug, or has a pattern of illegal drug use that interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents

- Any household member's abuse or pattern of abuse of alcohol may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents

- Any household member has violated the family's obligation not to engage in any drug-related criminal activity

- Any household member has violated the family's obligation not to engage in violent criminal activity

### Use of Illegal Drugs and Alcohol Abuse

#### HADC Policy

The HADC will terminate a family's assistance if any household member is currently engaged in any illegal use of a drug, or has a pattern of illegal drug use that interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents.

The HADC will terminate assistance if any household member's abuse or pattern of abuse of alcohol threatens the health, safety, or right to peaceful enjoyment of the premises by other residents.

*Currently engaged in* is defined as any use of illegal drugs during the previous six months.

The HADC will consider all credible evidence, including but not limited to, any record of arrests, convictions, or eviction of household members related to the use of illegal drugs or abuse of alcohol.

In making its decision to terminate assistance, the HADC will consider alternatives as described in Section 12-II.C and other factors described in Sections 12-II.D and 12-II.E. Upon consideration of such alternatives and factors, the HADC may, on a case-by-case basis, choose not to terminate assistance.



HCV Program Administrative Plan

## Drug-Related and Violent Criminal Activity [24 CFR 5.100]

*Drug* means a controlled substance as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802).

*Drug-related criminal activity* is defined by HUD as the illegal manufacture, sale, distribution, or use of a drug, or the possession of a drug with intent to manufacture, sell, distribute or use the drug.

*Violent criminal activity* means any criminal activity that has as one of its elements the use, attempted use, or threatened use of physical force substantial enough to cause, or be reasonably likely to cause, serious bodily injury or property damage.

### HADC Policy

The HADC will terminate a family's assistance if any household member has violated the family's obligation not to engage in any drug-related or violent criminal activity during participation in the HCV Program.

The HADC will consider all credible evidence, including but not limited to, any record of arrests and/or convictions of household members related to drug-related or violent criminal activity, and any eviction or notice to evict based on drug-related or violent criminal activity.

In making its decision to terminate assistance, the HADC will consider alternatives as described in Section 12-II.C and other factors described in Sections 12-II.D and 12-II.E. Upon consideration of such alternatives and factors, the HADC may, on a case-by-case basis, choose not to terminate assistance.

## Other Authorized Reasons for Termination of Assistance
## [24 CFR 982.552(c), 24 CFR 5.2005(c)]

HUD permits the PHA to terminate assistance under a number of other circumstances. It is left to the discretion of the PHA whether such circumstances in general warrant consideration for the termination of assistance. As discussed further in section 12-II.E, the Violence against Women Act of 2013 explicitly prohibits PHAs from considering incidents of, or criminal activity directly related to, domestic violence, dating violence, or stalking as reasons for terminating the assistance of a victim of such abuse.

### HADC Policy

The HADC **will not** terminate a family's assistance because of the family's failure to meet its obligations under the Family Self-Sufficiency program.



**HCV Program Administrative Plan**

The HADC will terminate a family's assistance if:

- The family has failed to comply with any family obligations under the program. See Exhibit 12-1 for a listing of family obligations and related HADC policies.

- Any family member has been evicted from federally-assisted housing in the last five (5) years.

- Any HADC has ever terminated assistance under the program for any member of the family.

- Any family member has committed fraud, bribery, or any other corrupt or criminal act in connection with any federal housing program.

- The family currently owes rent or other amounts to any PHA in connection with the Section 8 or public housing assistance under the 1937 Act.

- The family has not reimbursed any HADC for amounts the HADC paid to an owner under a HAP contract for rent, damages to the unit, or other amounts owed by the family under the lease.

- The family has breached the terms of a repayment agreement entered into with the HADC.

- A family member has engaged in or threatened violent or abusive behavior toward the HADC personnel.

  o *Abusive or violent behavior towards HADC personnel* includes verbal as well as physical abuse or violence. Use of racial epithets, or other language, written or oral, that is customarily used to intimidate may be considered abusive or violent behavior.

  o *Threatening* refers to oral or written threats or physical gestures that communicate intent to abuse or commit violence.

In making its decision to terminate assistance, the HADC will consider alternatives as described in Section 12-II.C and other factors described in Sections 12-II.D and 12-II.E. Upon consideration of such alternatives and factors, the HADC may, on a case-by-case basis, choose not to terminate assistance.

## Family Absence from the Unit [24 CFR 982.312]

The family may be absent from the unit for brief periods. The PHA must establish a policy on how long the family may be absent from the assisted unit. However, the family may not be absent from the unit for a period of more than 180 consecutive calendar days for any reason. Absence in this context means that no member of the family is residing in the unit.



### HADC Policy

If the family is absent from the unit for more than 180 consecutive calendar days, the family's assistance will be terminated. Notice of termination will be sent in accordance with Section 12-II.F.

## Insufficient Funding [24 CFR 982.454]

The PHA may terminate HAP contracts if the PHA determines, in accordance with HUD requirements, that funding under the consolidated ACC is insufficient to support continued assistance for families in the program.

### HADC Policy

The HADC will determine whether there is sufficient funding to pay for currently assisted families according to the policies in Part VIII of Chapter 16. If the HADC determines there is a shortage of funding, prior to terminating any HAP contracts, the HADC will determine if any other actions can be taken to reduce program costs.

In the event that the HADC stops issuing vouchers due to a funding shortfall, and the HADC is not currently assisting the required number of special purpose vouchers, the HADC will resume issuing vouchers in the following priority:

1. Special Purpose Voucher Families (e.g., Veterans Affairs Supportive Housing (VASH) families, Family Unification Program (FUP) families and Project-Based Voucher contracts);
2. Transfer Waiting List;
3. New Applicant Waiting List.

If after implementing all reasonable cost cutting measures there is not enough funding available to provide continued assistance for current participants, the PHA will terminate HAP contracts as a last resort.

Prior to terminating any HAP contracts, the HADC will inform the local HUD field office. The HADC will terminate the minimum number needed in order to reduce HAP costs to a level within the HADC's annual budget authority.

If the HADC must terminate HAP contracts due to insufficient funding, the last HAP contracts to be terminated will be families comprising the required number of special purpose vouchers:

- Veteran's Affairs Supportive Housing (VASH);
- Family Unification Program (FUP) if applicable;
- Project-Based Voucher (PBV) Contracts.



# PART II:
# APPROACH TO TERMINATION OF ASSISTANCE

## 12-II.A.    OVERVIEW

The PHA is required by regulation to terminate a family's assistance if certain program rules are violated. For other types of offenses, the regulations give the PHA the discretion to either terminate the family's assistance or to take another action. This part discusses the various actions the PHA may choose to take when it has discretion, and outlines the criteria the PHA will use to make its decision about whether or not to terminate assistance. It also specifies the requirements for the notice that must be provided before terminating assistance.

## 12-II.B.    METHOD OF TERMINATION
##              [24 CFR 982.552(A)(3)]

The way in which the PHA terminates assistance depends upon individual circumstances. HUD permits the PHA to terminate assistance by:

- Terminating housing assistance payments under a current HAP contract,
- Refusing to approve a request for tenancy or to enter into a new HAP contract, or
- Refusing to process a request for or to provide assistance under portability procedures.

## 12-II.C.    ALTERNATIVES TO TERMINATION OF ASSISTANCE

### Change in Household Composition

As a condition of continued assistance, the PHA may require that any household member who participated in or was responsible for an offense no longer resides in the unit [24 CFR 982.552(c)(2)(ii)].

> **HADC Policy**
>
> As a condition of continued assistance, the head of household must certify that the culpable family member has vacated the unit and will not be permitted to visit or to stay as a guest in the assisted unit. The family must present evidence of the former family member's current address upon HADC request.

### Repayment of Family Debts

> **HADC Policy**
>
> If a family owes amounts to the HADC as a condition of continued assistance, the HADC will require the family to repay the full amount or to enter into a



repayment agreement, within 30 calendar days of receiving notice from the HADC of the amount owed. See Chapter 16 for policies on repayment agreements.

## 12-II.D. CRITERIA FOR DECIDING TO TERMINATE ASSISTANCE

### Evidence

For criminal activity, HUD permits the PHA to terminate assistance if a *preponderance of the evidence* indicates that a household member has engaged in the activity, regardless of whether the household member has been arrested or convicted [24 CFR 982.553(c)].

---

#### HADC Policy

The HADC will use the concept of the preponderance of the evidence as the standard for making all termination decisions.

*Preponderance of the evidence* is defined as evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not. Preponderance of the evidence may not be determined by the number of witnesses, but by the greater weight of all evidence

---

### Consideration of Circumstances [24 CFR 982.552(c)(2)(i)]

The PHA is permitted, but not required, to consider all relevant circumstances when determining whether a family's assistance should be terminated.

---

#### HADC Policy

The HADC will consider the following factors when making its decision to terminate assistance:

- The seriousness of the case, especially with respect to how it would affect other residents

- The effects that termination of assistance may have on other members of the family who were not involved in the action or failure

- The extent of participation or culpability of individual family members, including whether the culpable family member is a minor or a person with disabilities or (as discussed further in section 12-II.E) a victim of domestic violence, dating violence, or stalking

- The length of time since the violation occurred, the family's recent history and the likelihood of favorable conduct in the future

---



- In the case of drug or alcohol abuse, whether the culpable household member is participating in or has successfully completed a supervised drug or alcohol rehabilitation program or has otherwise been rehabilitated successfully

- The HADC will require the participant to submit evidence of the household member's current participation in or successful completion of a supervised drug or alcohol rehabilitation program, or evidence of otherwise having been rehabilitated successfully.

- In the case of program abuse, the dollar amount of the overpaid assistance and whether or not a false certification was signed by the family

## Reasonable Accommodation [24 CFR 982.552(c)(2)(iv)]

If the family includes a person with disabilities, the PHA's decision to terminate the family's assistance is subject to consideration of reasonable accommodation in accordance with 24 CFR Part 8.

### HADC Policy

If a family indicates that the behavior of a family member with a disability is the reason for a proposed termination of assistance, the HADC will determine whether the behavior is related to the disability. If so, upon the family's request, the HADC will determine whether alternative measures are appropriate as a reasonable accommodation. The HADC will only consider accommodations that can reasonably be expected to address the behavior that is the basis of the proposed termination of assistance. See Chapter 2 for a discussion of reasonable accommodation.

## 12-II.E.    TERMINATIONS RELATED TO DOMESTIC VIOLENCE, DATING VIOLENCE, SEXUAL ASSAULT OR STALKING

This section addresses the protections against termination of assistance that the Violence against Women Act of 2013 (VAWA) provides for victims of domestic violence, dating violence, and stalking. For general VAWA requirements and PHA policies pertaining to notification, documentation, and confidentiality, see section 16-IX of this plan, where definitions of key VAWA terms are also located.

### VAWA Protections against Termination

VAWA provides four specific protections against termination of HCV assistance for victims of domestic violence, dating violence, sexual assault or stalking. (*Note:* The second, third, and



- If the facts prove the grounds for denial, and the denial is discretionary, the HADC will consider the recommendation of the person conducting the informal review in making the final decision whether to deny assistance.

The HADC will notify the applicant of the final decision, including a statement explaining the reason(s) for the decision. The notice will be mailed within 30 calendar days of the informal review, to the applicant and his or her representative.

If the decision to deny is overturned as a result of the informal review, processing for admission will resume.

If the family does not appear at the scheduled time, and due to the nature of the conflict was unable to reschedule the informal review in advance, the family must contact the HADC within 24 hours (excluding weekends and holidays) of the scheduled informal review date. The HADC will reschedule the informal review only if the family can show good cause for the failure to appear, or if it is needed as a reasonable accommodation for a person with disabilities. If the family misses the rescheduled informal review, the family's assistance is terminated.

If the family fails to appear for their informal review, the denial of admission will stand and the family will be so notified.

## 16-III.C.   INFORMAL HEARINGS FOR PARTICIPANTS
### [24 CFR 982.555]

PHAs must offer an informal hearing for certain PHA determinations relating to the individual circumstances of a participant family. A participant is defined as a family that has been admitted to the PHA's HCV Program and is currently assisted in the program. The purpose of the informal hearing is to consider whether the PHA's decisions related to the family's circumstances are in accordance with the law, HUD regulations and PHA policies.

The PHA is not permitted to terminate a family's assistance until the time allowed for the family to request an informal hearing has elapsed, and any requested hearing has been completed. Termination of assistance for a participant may include any or all of the following:

- Refusing to enter into a HAP contract or approve a lease
- Terminating housing assistance payments under an outstanding HAP contract
- Refusing to process or provide assistance under portability procedures

### Decisions Subject to Informal Hearing

Circumstances for which the PHA must give a participant family an opportunity for an informal hearing are as follows:



**HCV Program Administrative Plan**

- A determination of the family's annual or adjusted income, and the use of such income to compute the housing assistance payment
- A determination of the appropriate utility allowance (if any) for tenant-paid utilities from the PHA utility allowance schedule
- A determination of the family unit size under the PHA's subsidy standards
- A determination to terminate assistance for a participant family because of the family's actions or failure to act, including, but not limited to criminal activity(see Chapter 3)
- A determination to terminate assistance because the participant has been absent from the assisted unit for longer than the maximum period permitted under PHA policy and HUD rules
- A determination to terminate a family's Family Self Sufficiency contract, withhold supportive services, or propose forfeiture of the family's escrow account [24 CFR 984.303(i)]

Circumstances for which an informal hearing is not required are as follows:

- Discretionary administrative determinations by the PHA
- General policy issues or class grievances
- Establishment of the PHA schedule of utility allowances for families in the program
- A PHA determination not to approve an extension or suspension of a voucher term
- A PHA determination not to approve a unit or tenancy
- A PHA determination that a unit selected by the applicant is not in compliance with the HQS
- A PHA determination that the unit is not in accordance with HQS because of family size
- A determination by the PHA to exercise or not to exercise any right or remedy against an owner under a HAP contract

---

### HADC Policy

The HADC will only offer participants the opportunity for an informal hearing when required to by the regulations.

---

## Informal Hearing Procedures

### Notice to the Family [24 CFR 982.555(c)]

When the PHA makes a decision that is subject to informal hearing procedures, the PHA must inform the family of its right to an informal hearing at the same time that it informs the family of the decision.

For decisions related to the family's annual or adjusted income, the determination of the appropriate utility allowance, and the determination of the family unit size, the PHA must notify the family that they may ask for an explanation of the basis of the determination, and that if they do not agree with the decision, they may request an informal hearing on the decision.

For decisions related to the termination of the family's assistance, or the denial of a family's request for an exception to the PHA's subsidy standards, the notice must contain a brief statement of the reasons for the decision, a statement that if the family does not agree with the decision, the family may request an informal hearing on the decision, and a statement of the deadline for the family to request an informal hearing.

### HADC Policy

In cases where the HADC makes a decision for which an informal hearing must be offered, the notice to the family will include all of the following:

- The proposed action or decision of the HADC.
- A brief statement of the reasons for the decision including the regulatory reference.
- The date the proposed action will take place.
- A statement of the family's right to an explanation of the basis for the HADC's decision.
- A statement of the family's right to obtain copies of records upon which the decision is based at the expense of the family
- A statement that if the family does not agree with the decision the family may request an informal hearing of the decision.
- A deadline for the family to request the informal hearing.
- To whom the hearing request should be addressed.

## Scheduling an Informal Hearing [24 CFR 982.555(d)]

When an informal hearing is required, the PHA must proceed with the hearing in a reasonably expeditious manner upon the request of the family.

### HADC Policy

A request for an informal hearing must be made in writing and delivered to the HADC either in person or by mail, no later than 14 calendar days from the date of the HADC's decision or notice to terminate assistance. As a reasonable accommodation, the HADC may permit a verbal request for an informal hearing.



The HADC will schedule and send written notice of the informal hearing to the family within 30 calendar days of the family's request. If the family misses the scheduled hearing, the family's assistance is terminated.

The family may request to reschedule a hearing for good cause, or if it is needed as a reasonable accommodation for a person with disabilities. Good cause is defined as an unavoidable conflict which seriously affects the health, safety or welfare of the family. Requests to reschedule a hearing must be made orally or in writing prior to the hearing date. At its discretion, the HADC may request documentation of the "good cause" prior to rescheduling the hearing. If the family misses the rescheduled hearing, the family's assistance is terminated.

If the family does not appear at the scheduled time, and was unable to reschedule the hearing in advance due to the nature of the conflict, the family must contact the HADC within 24 hours of the scheduled hearing date, excluding weekends and holidays. The HADC will reschedule the hearing only if the family can show good cause for the failure to appear, or if it is needed as a reasonable accommodation for a person with disabilities. If the family misses the rescheduled hearing, the family's assistance is terminated.

## Pre-Hearing Right to Discovery [24 CFR 982.555(e)]

Participants and the PHA are permitted pre-hearing discovery rights. The family must be given the opportunity to examine before the hearing any PHA documents that are directly relevant to the hearing. The family must be allowed to copy any such documents at their own expense. If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing.

The PHA hearing procedures may provide that the PHA must be given the opportunity to examine at the PHA offices before the hearing, any family documents that are directly relevant to the hearing. The PHA must be allowed to copy any such document at the PHA's expense. If the family does not make the document available for examination on request of the PHA, the family may not rely on the document at the hearing.

For the purpose of informal hearings, *documents* include records and regulations.

### HADC Policy

The family will be allowed to copy any documents related to the hearing at a cost of $.25 per page. The family must request discovery of HADC documents no later than 12:00 p.m. on the business day prior to the scheduled hearing date.

The HADC must be given an opportunity to examine — at the HADC office prior to the hearing — any family documents that are directly relevant to the hearing. Whenever a participant requests an informal hearing, the HADC will



**HCV Program Administrative Plan**

automatically mail a letter to the participant requesting a copy of all documents that the participant intends to present or utilize at the hearing. The participant must make the documents available no later than 12:00 pm on the business day prior to the scheduled hearing date.

## Participant's Right to Bring Counsel [24 CFR 982.555(e)(3)]

At its own expense, the family may be represented by a lawyer or other representative at the informal hearing.

## Informal Hearing Officer [24 CFR 982.555(e)(4)]

Informal hearings will be conducted by a person or persons approved by the PHA, other than the person who made or approved the decision or a subordinate of the person who made or approved the decision.

### HADC Policy

The HADC has designated staff to serve as hearing officer.

## Attendance at the Informal Hearing

### HADC Policy

Hearings may be attended by a hearing officer and the following applicable persons:

- A HADC representative(s) and any witnesses for the HADC;
- The participant and any witnesses for the participant;
- The participant's counsel or other representative; and
- Any other person approved by the HADC as a reasonable accommodation for a person with a disability

## Conduct at Hearings

The person who conducts the hearing may regulate the conduct of the hearing in accordance with the PHA's hearing procedures [24 CFR 982.555(4)(ii)].

### HADC Policy

The hearing officer is responsible to manage the order of business and to ensure that hearings are conducted in a professional and businesslike manner. Attendees are expected to comply with all hearing procedures established by the hearing officer and guidelines for conduct. Any person demonstrating disruptive, abusive or otherwise inappropriate behavior will be excused from the hearing at



**HCV Program Administrative Plan**

the discretion of the hearing officer. Furthermore, if disruptive behavior is displayed by the participant, the hearing officer will end the hearing and the participant's HCV Program assistance will be terminated.

## Evidence [24 CFR 982.555(e)(5)]

The PHA and the family must be given the opportunity to present evidence and question any witnesses. In general, all evidence is admissible at an informal hearing. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.

### HADC Policy

Any evidence to be considered by the hearing officer must be presented at the time of the hearing. There are four categories of evidence.

- *Oral evidence*: The testimony of witnesses.

- *Documentary evidence*: A writing which is relevant to the case, for example, a letter written to the HADC. Writings include all forms of recorded communication or representation, including letters, words, pictures, sounds, videotapes or symbols or combinations thereof.

- *Demonstrative evidence*: Evidence created specifically for the hearing and presented as an illustrative aid to assist the hearing officer, such as a model, a chart or other diagram.

- *Real evidence*: A tangible item relating directly to the case.

- *Hearsay Evidence*: Evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter. Even though evidence, including hearsay, is generally admissible, hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision.

If either the HADC or the family fail to comply with the discovery requirements described above, the hearing officer will refuse to admit such evidence.

Other than the failure of a party to comply with discovery, the hearing officer has the authority to overrule any objections to evidence.

## Hearing Officer's Decision [24 CFR 982.555(e)(6)]

The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family must be based on a preponderance of evidence presented at the hearing. A copy of the hearing must be furnished promptly to the family.

---

### *HADC Policy*

In rendering a decision, the hearing officer will consider the following matters:

- **HADC Notice to the Family**: The hearing officer will determine if the reasons for the PHA's decision are factually stated in the Notice.

- **Discovery**: The hearing officer will determine if the HADC and the family were given the opportunity to examine any relevant documents in accordance with HADC policy.

- **HADC Evidence to Support the HADC Decision**: The evidence consists of the facts presented. Evidence is not conclusion and it is not argument. The hearing officer will evaluate the facts to determine if they support the HADC's conclusion.

- **Validity of Grounds for Termination of Assistance (when applicable)**: The hearing officer will determine if the termination of assistance is for one of the grounds specified in the HUD regulations and HADC policies. If the grounds for termination are not specified in the regulations or in compliance with HADC policies, then the decision of the HADC will be overturned.

The hearing officer will issue a written decision to the family and the HADC no later than 30 calendar days after the hearing. The report will contain the following information:

- **Hearing information:**
  - Name of the participant;
  - Date, time and place of the hearing;
  - Name of the hearing officer;
  - Name of the HADC representative; and
  - Name of family representative (if any).

- **Background**: A brief, impartial statement of the reason for the hearing.

- **Summary of the Evidence**: The hearing officer will summarize the testimony of each witness and identify any documents that a witness produced in support of his/her testimony and that are admitted into evidence.

- **Findings of Fact**: The hearing officer will include all findings of fact, based on a preponderance of the evidence. *Preponderance of the evidence* is defined as evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not. Preponderance of the evidence may not be

---



determined by the number of witnesses, but by the greater weight of all evidence.

- **Conclusions:** The hearing officer will render a conclusion derived from the facts that were found to be true by a preponderance of the evidence. The conclusion will result in a determination of whether these facts uphold the HADC's decision.

- **Order:** The hearing report will include a statement of whether the PHA's decision is upheld or overturned. If it is overturned, the hearing officer will instruct the PHA to change the decision in accordance with the hearing officer's determination. In the case of termination of assistance, the hearing officer will instruct the PHA to restore the participant's program status.

## Procedures for Rehearing or Further Hearing

### HADC Policy

The hearing officer may ask the family for additional information and/or might adjourn the hearing in order to reconvene at a later date, before reaching a decision. If the family misses an appointment or deadline ordered by the hearing officer, the action of the HADC will take effect and another hearing will not be granted.

In addition, within 30 calendar days after the date the hearing officer's report is mailed to the HADC and the participant, the HADC or the participant may request a rehearing or a further hearing. Such request must be made in writing and postmarked or hand-delivered to the hearing officer and to the other party within the 14 calendar day period. The request must demonstrate cause, supported by specific references to the hearing officer's report, why the request should be granted.

A rehearing or a further hearing may be requested for the purpose of rectifying any obvious mistake of law made during the hearing or any obvious injustice not known at the time of the hearing.

It shall be within the sole discretion of the HADC to grant or deny the request for further hearing or rehearing. A further hearing may be limited to written submissions by the parties, in the manner specified by the hearing officer.

## PHA Notice of Final Decision [24 CFR 982.555(f)]

The PHA is not bound by the decision of the hearing officer for matters in which the PHA is not required to provide an opportunity for a hearing, decisions that exceed the authority of the hearing officer, decisions that conflict with or contradict HUD regulations, requirements, or are otherwise contrary to Federal, State or local laws.



If the PHA determines it is not bound by the hearing officer's decision in accordance with HUD regulations, the PHA must promptly notify the family of the determination and the reason for the determination.

---

### HADC Policy

The HADC will mail a "Notice of Final Decision" including the hearing officer's report, to the participant and their representative. This Notice will be sent by mail. The participant will be mailed the original "Notice of Final Decision". A copy of the "Notice of Final Decision" will be maintained in the HADC's file.

---

## 16-III.D.    HEARING AND APPEAL PROVISIONS FOR NONCITIZENS [24 CFR 5.514]

Denial or termination of assistance based on immigration status is subject to special hearing and notice rules. Applicants who are denied assistance due to immigration status are entitled to an informal hearing, not an informal review.

Assistance to a family may not be delayed, denied, or terminated on the basis of immigration status at any time prior to a decision under the United States Citizenship and Immigration Services (USCIS) appeal process. Assistance to a family may not be terminated or denied while the PHA hearing is pending, but assistance to an applicant may be delayed pending the completion of the informal hearing.

A decision against a family member, issued in accordance with the USCIS appeal process or the PHA informal hearing process, does not preclude the family from exercising the right, that may otherwise be available, to seek redress directly through judicial procedures.

### Notice of Denial or Termination of Assistance [24 CFR 5.514(d)]

The notice of denial or termination of assistance for noncitizens must advise the family:

- That financial assistance will be denied or terminated, and provide a brief explanation of the reasons for the proposed denial or termination of assistance.
- The family may be eligible for proration of assistance.
- In the case of a participant, the criteria and procedures for obtaining relief under the provisions for preservation of families [24 CFR 5.514 and 5.518].
- That the family has a right to request an appeal to the USCIS of the results of secondary verification of immigration status and to submit additional documentation or explanation in support of the appeal.
- That the family has a right to request an informal hearing with the PHA either upon completion of the USCIS appeal or in lieu of the USCIS appeal.

SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

ANGELA GOODMAN

     **Plaintiff,**

**vs.**

     **Civil Action**
     **Case Number** _____

**THE HOUSING AUTHORITY OF DEKALB
COUNTY and
EUGENE WALKER, in his official capacity as
its Executive Director,**

     **Defendants.**

## EXHIBIT B: ANGELA GOODMAN AFFIDAVIT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER/INTERLOCUTORY INJUNCTION

Personally appeared, Angela Goodman, Plaintiff in the above-styled action, who being duly sworn, says:

1.     I am the Plaintiff in this case.

2.     I support seven minor children and a disabled adult child in my household.

3.     I am currently homeless and staying temporarily in a one-bedroom weekly motel room with my family because of this case.

4.     On September 13, 2016, HADC notified me that it was proposing to terminate my family's Section 8 assistance for the following two reasons: (1) failing to allow HADC to inspect the unit and (2) damaging the unit beyond normal wear and tear.

5.     I timely requested a hearing, and I noted in my request that I missed the emergency re-inspection because my son with mental health problems was in the hospital.

6.     A hearing was held on November 3, 2016.

7.     The hearing was not recorded.

8.     At the hearing, the only evidence offered by HADC was the inspection notices, my lease, my voucher, and a list of the Family Obligations.

-1-

9.   The only witness testifying on behalf of HADC was Kentrye Cornelious, Compliance Officer for the Section 8 Program. Ms. Cornelious did not have any personal knowledge of the alleged violations or conditions in my house.

10.   At the hearing, I testified to the following:

   a.   I have been a participant in the Section 8 program for 18 years.

   b.   I completed all the repairs on the initial inspection list that were my responsibility.

   c.   I was not responsible for the broken kitchen drawer. I complained to the landlord about the broken drawer in the past. The landlord tried to fix it, but was unable to do so. I told my family not to use the drawer, since it did not work properly.

   d.   I replaced the batteries in all the smoke detectors in the house. Despite replacing the batteries, at least one of the smoke detectors failed to work. I didn't believe it was my responsibility to fix a broken smoke detector.

   e.   I did not cause the front door glass to crack. It was cracked when I moved in, but the crack became bigger over time. I did not believe it was my responsibility to fix the cracked door glass.

   f.   I have had many issues with my landlord refusing or failing to make repairs. I complained to the landlord and to HADC on several occasions.

   g.   I missed the emergency follow-up inspection because my son was in the hospital at the time. However, the follow-up inspection was rescheduled and completed on September 30, 2016.

11.   The hearing officer issued a decision on November 17, 2016, upholding the HADC's decision to terminate my family's assistance.

12.   On December 1, 2016, HADC sent me notice that the last payment to my landlord would be January 1, 2017, which leads me to believe that my voucher assistance ends on January 31, 2017.

13.   I believe HADC stopped paying my landlord rent as of October 1, 2016 because of my landlord's failure to make repairs.

14.   On November 15, 2016, my landlord filed an eviction against me since HADC was not paying its portion of the rent.

15.   My portion of the rent has been zero.

16.    On January 5, 2017, I went to court and my landlord and I worked out a consent agreement with our attorneys. I agreed to move out on January 19, 2017 voluntarily to avoid an eviction. The landlord agreed to dismiss the dispossessory case against me.

17.    I cannot afford to pay market rent. I cannot even afford to continue staying at the weekly hotel.

18.    The weekly hotel does not have any equipment to cook, so I am spending extra money to buy prepared or microwavable food for my family.

19.    It is very difficult to have my entire family living in one bedroom. My children do not have a place to play outside, and I am afraid I will be put out once the management realizes how many people are staying in the room.

20.    I believe that my current living situation is aggravating my son's disability.

Angela Goodman, Plaintiff

Subscribed and sworn before me on

January 31 , 20 17 .

Notary Public

NOTARY
My Comm Expires
March 16, 2020
PUBLIC
SARAH T AUSTIN
DEKALB COUNTY, GEORGIA

-3-

TEL: (404) 270-2500

HCV INSPECTIONS FAX:
FAX: (404) 270-2858

750 Commerce Dr.
Suite 201
Decatur, GA 30030



**HADC**
HOUSING AUTHORITY OF DeKALB COUNTY
1955

16 SEP 19 AM 9: 41

REC'D BY _____

## Housing Quality Standards Proposed Termination Notice (Violation of Family Obligations)

09/13/2016

t0001236
ANGELA GOODMAN
6047 MARBUT RD
LITHONIA, GA  30058-5331

Dear ANGELA GOODMAN

You are in violation of your family obligations as a participant of the Housing Choice Voucher Program. Therefore, the Housing Authority of DeKalb County (HADC) is proposing to terminate your housing assistance. Information regarding the specific violation is listed below:

### Details of Violation(s):

NOTICE OF FAILED REINSPECTION / 24HR EMERGENCY REPAIRS (MUST BE REPAIRED in 24hr)

### Housing Quality Standards Violations

B.5  FAILURE TO ALLOW THE PHA TO INSPECT UNIT AT REASONABLE TIMES AND AFTER REASONABLE NOTICE

D.7 DAMAGE THE UNIT OR PREMISES (other than damage from ordinary wear and tear) OR PERMIT ANY GUEST TO DAMAGE THE UNIT OR PREMISES

If you would like to appeal this proposed termination of your housing assistance, you may do so by completing the attached Informal Hearing Request Form and return to the HADC via email to inspections@dekalbhousing.org or fax to (404) 270-2658. **It is important to submit the Informal Hearing Request Form to the Inspections Department, in writing, within 14 days of the date of this letter.** If we do not receive a request for an informal hearing within 14 days, your housing assistance will be terminated and the last payment to your owner will be made   10/1/2016
The property owner has been notified of this proposed termination by separate correspondence. No information was provided to the owner regarding the specific violation.

Sincerely,

Inspections Department
inspections@dekalbhousing.org
404-270-2500

**EXHIBIT**

C

MISSION: *To provide sustainable and affordable housing as a platform to enhance lives.*

T 0001236
Inspections

TEL: (404) 270-2500

HCV INSPECTIONS FAX:
FAX: (404) 270-2658

750 Commerce Dr.
Suite 201
Decatur, GA 30030



**HADC**

HOUSING AUTHORITY OF DEKALB COUNTY    1966

## INFORMAL REVIEW REQUEST FORM

To appeal the Proposed Termination of your housing assistance, complete and return this form to the HADC within days of the Housing Quality Standards Proposed Termination notice dated 09/13/2016 .

| | |
|---|---|
| Participant's printed name: | ANGELA GOODMAN |
| Mailing address: | 6047 MARBUT RD |
| | LITHONIA, GA  30058-5331 |
| Contact Number(s): | HM: |
| | WK: |
| | CELL: 678 353-5573 |

Participant Signature _Angie Goodman_    Date 9/19/16

State the reason for requesting information hearing:

My deepest apology I didn't miss my inspection on purpose my mind and thoughts was my son getting well and home to his family he's dealing with mental health. It hurt me because he's so young I forgot my inspection was right after the holiday. I did get the repairs, fixed please do forgive me for ~~not be~~ missing inspection.

Date request form is received by HCVP:

**MISSION:** *To provide sustainable and affordable housing as a platform to enhance lives.*

EXHIBIT
D
tabbies



TEL: 404-270-2500
www.dekalbhousing.org

750 Commerce Drive
Suite 201
Decatur, Georgia 30030

HOUSING AUTHORITY OF DEKALB COUNTY
1955

---

November 17, 2016

Angela Goodman
6047 Marbut Road
Lithonia, GA 30058

Re: Informal Hearing in the Matter of **Angela Goodman**

**Dear Ms. Angela Goodman:**

Below please find the Administrative Hearing Officer's decision in the above-referenced matter. The decision was reached by a preponderance of the evidence.

## I.    INTRODUCTION

**Angela Goodman** received the first proposed termination of her HCVP benefits dated **September 13, 2016** for violations of the following obligations:

- Notice of failed reinspection / 24 hour emergency repairs

**Specific Violations/HUD Violation(s):**

**24 CFR 982.551(1) & 24 CFR 982.552(c): The PHA may at any time deny program assistance for an applicant or terminate program assistance for a participant for any of the following grounds of the HAP Contract:**

- **4B-5:** Failure to allow the PHA to inspect unit at reasonable times and after reasonable notice

  The family (including each family member) must not:

- **4D-7:** Damage the unit or premises other than damage from ordinary wear and tear or permit any guest to damage the unit or premises

The Participant did request an Informal Hearing within the required time frame. The Informal Hearing was scheduled for **November 3, 2016 at 10:00am** and the Participant was sent an appointment notice **September 22, 2016.**

This case came before the Administrative Hearing Officer on **November 3, 2016**. The Participant acknowledged that they had the opportunity to bring documentary evidence, photographic evidence, witnesses and that they had the opportunity to hire legal representation.

Present at the Hearing were **Kentrye Cornelious, Housing Choice Voucher Compliance Officer; Turkia Hill, the Administrative Hearing Officer; and Angela Goodman.**

EXHIBIT
E

TEL: 404-270-2500
www.dekalbhousing.org

750 Commerce Drive
Suite 201
Decatur, Georgia 30030



**HADC**

HOUSING AUTHORITY OF DEKALB COUNTY
1955

---

## II.   HEARING

The Compliance Officer was given an opportunity to ask the Participant questions and the Participant was given an opportunity to ask the Compliance Officer questions.

The Compliance Officer provided the following documentary evidence:

    a.   **Family Obligations dated November 13, 2015**
    b.   **Form HUD-52646 dated January 27, 2016**
    c.   **Residential Lease Agreement**
    d.   **Inspection Notices**

### The Compliance Officer testified the following:

- Ms. Goodman was sent a letter notifying her of her inspection. The unit failed the inspection September 2, 2016. The unit failed due to 24-hour violations.
- On September 6, 2016, the unit failed due to no one being home.
- Following the September 6, 2016 inspection, a proposed termination letter was mailed to Ms. Goodman.
- Ms. Goodman requested a hearing and stated that her son was hospitalized. As a result, she forgot about the inspection. Ms. Goodman explained that the repairs were completed and she was prepared for an additional inspection.
- On September 30, 2016, the unit failed inspection due to routine violations and a 24-hour violation.

The Participant provided the following documentary evidence (including any witness evidence):

    a.   N/A

### The Participant testified the following:

- Ms. Goodman explained that she tried to do her part.
- According to Ms. Goodman, the smoke detector needed batteries. She had the batteries replaced, however, the detector would not work.
- The front door was cracked, however, she did not feel that it was her responsibility. Per Ms. Goodman, the crack had been visible in the door since she moved in.
- The kitchen drawer was damaged and Ms. Goodman explained that she tried to repair it, as best as she could. She explained that her children have been asked not to touch the drawer.
- Ms. Goodman's landlord repaired the floor. There was something crawling under the floor. According to Ms. Goodman, there were rats crawling under the floor.
- In January 2016 or February 2016, Ms. Goodman came into the HADC office to complain. She brought pictures and text messages of the photos of her home and the correspondence between her and her landlord.
- In April 2016 or May 2016, several repairs were made by her landlord.
- Ms. Goodman installed private locks on the bedroom doors to prevent her children from entering the bedrooms.
- In October 2016, a new oven was installed in the home.
- Ms. Goodman explained that the window was repaired.
- The garage door was still damaged. Ms. Goodman said she reported the damaged door one year ago, however, she failed to notify the HADC of the damaged door.

TEL: 404-270-2500
www.dekalbhousing.org

750 Commerce Drive
Suite 201
Decatur, Georgia 30030



- Ms. Goodman stated that her son is in and out of the hospital, however, he will soon be attending a mental health program. In September 2016, he was admitted for 3-4 days.
- Currently, Ms. Goodman works for Meridian Perimeter of Atlanta. She has been employed full-time for at least one year.
- Ms. Goodman ported from Homestead, FL. She has been on the Section 8 Program for 18 years and she has resided in DeKalb County since 2002.
- Ms. Goodman's current income includes employment, foodstamps, child support, and social security.
- Ms. Goodman and her eight children currently reside in the household.



TEL: 404-270-2500
www.dekalbhousing.org

750 Commerce Drive
Suite 201
Decatur, Georgia 30030

HOUSING AUTHORITY OF DEKALB COUNTY
1955

---

## III.    APPLICABLE PROGRAM RULES AND FEDERAL REGULATIONS

1. **Obligations of Participant/Applicant (24 CFR 982.551):**

    (a)  Purpose:  This section states the obligations of a participant family under the program.  The violations specific to this case have been highlighted.

    **4. Obligations of the Family**

    A.  When the family's unit is approved and the HAP contract is executed, the family must follow the rules listed below in order to continue participating in the housing choice voucher program.

    B.  The family must:

    1.  Supply any information that the PHA or HUD determines to be necessary including evidence of citizen- ship or eligible immigration status, and information for use in a regularly scheduled reexamination or interim reexamination of family income and composition.

    2.  Disclose and verify social security numbers and sign and submit consent forms for obtaining information.

    3.  Supply any information requested by the PHA to verify that the family is living in the unit or information related to family absence from the unit.

    4.  Promptly notify the PHA in writing when the family is away from the unit for an extended period of time in accordance with PHA policies.

    5.  Allow the PHA to inspect the unit at reasonable times and after reasonable notice.

    6.  Notify the PHA and the owner in writing before moving out of the unit or terminating the lease.

    7.  Use the assisted unit for residence by the family. The unit must be the family's only residence.

    8.  Promptly notify the PHA in writing of the birth, adoption, or court-awarded custody of a child.

    9.  Request PHA written approval to add any other family member as an occupant of the unit.

    10. Promptly notify the PHA in writing if any family member no longer lives in the unit.

    11. Give the PHA a copy of any owner eviction notice.

    12. Pay utility bills and provide and maintain any appliances that the owner is not required to provide under the lease.

    C.  Any information the family supplies must be true and complete.

    D.  The family (including each family member) must not:

    1.  Own or have any interest in the unit (other than in a cooperative, or the owner of a manufactured home leasing a manufactured home space).



TEL: 404-270-2500
www.dekalbhousing.org

750 Commerce Drive
Suite 201
Decatur, Georgia 30030

**HOUSING AUTHORITY OF DEKALB COUNTY**
1955

2. Commit any serious or repeated violation of the lease.

3. Commit fraud, bribery or any other corrupt or criminal act in connection with the program.

4. Engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises.

5. Sublease or let the unit or assign the lease or transfer the unit.

6. Receive housing choice voucher program housing assistance while receiving another housing subsidy, for the same unit or a different unit under any other Federal, State or local housing assistance program.

7. Damage the unit or premises (other than damage from ordinary wear and tear) or permit any guest to damage the unit or premises.

8. Receive housing choice voucher program housing assistance while residing in a unit owned by a parent, child, grandparent, grandchild, sister or brother of any member of the family, unless the PHA has determined (and has notified the owner and the family of such determination) that approving rental of the unit, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

9. Engage in abuse of alcohol in a way that threatens the health, safety or right to peaceful enjoyment of the other residents and persons residing in the immediate vicinity of the premises.

**2. PHA denial or termination of assistance for family (24 CFR 982.552):**

(a) Action or inaction by family: (1) A PHA may deny assistance for an applicant or terminate assistance for a participant under the programs because of the family's action or failure to act as described in this section or 982.553. The provisions of this section do not affect denial or termination of assistance for grounds other than action or failure to act by the family.

(b) Authority to deny admission or terminate assistance. (1) Grounds for denial or termination of assistance: The PHA may at any time deny program assistance for an applicant, or terminate program assistance for a participant, for any of the following grounds: (i) If the family violates any family obligations under the program (see 982.551.) See 982.553 concerning denial or termination of assistance for crime by family members.

**3. Denial of admission and termination for assistance for criminals and alcohol abusers (24 CFR 982.553):**

(b) Terminating assistance: (2) Terminating assistance for other criminals. The PHA must establish standards that allow the PHA to terminate assistance under the program for a family if the PHA determines that any household member has violated the family's obligation under 982.551 not to engage in violent criminal activity.

(c) Evidence of criminal activity: The PHA may terminate assistance for criminal activity by a household member as authorized in this section if the PHA determines, based on a preponderance of the evidence, that the household member has engage in the activity, regardless of whether the household member has been arrested or convicted for such activity.



TEL: 404-270-2500
www.dekalbhousing.org

750 Commerce Drive
Suite 201
Decatur, Georgia 30030

## IV.    DECISION

After a careful review and consideration of all the facts and testimonies of the case, it is the opinion of this Administrative Hearing Officer by a preponderance of the evidence that Ms. Goodman was provided with a third opportunity to be successful after she confirmed that all repairs were made. However, in the hearing, Ms. Goodman explained that the repairs were not her responsibility. The items that initially failed continued to be in failed status due to Ms. Goodman's failure to repair the items. Ms. Goodman failed to provide true and accurate information regarding the repairs, thus causing a third inspection to be performed to no avail.

Therefore, the proposed termination of the Housing Choice Voucher for the above-stated violations is **UPHELD.**

Sincerely,

Turkia Hill
Administrative Hearing Officer

Cc: Housing Choice Voucher Department

TEL: (404) 270-2500

HCV COMPLIANCE FAX:
FAX: (404) 270-2477

750 Commerce Dr.
Suite 201
Decatur, GA 30030



**HADC**

HOUSING AUTHORITY OF DEKALB COUNTY
1956

12/01/2016

v0005857
MICHAEL FAN
1117 MIDSUMMER CT
MARIETTA, GA 30068

t0001236
ANGELA GOODMAN
6047 MARBUT RD
LITHONIA, GA 30058-5331

RE:   **Hearing Results – Housing Assistance Termination**
      **Hearing Date:** 11/10/2016

Dear ANGELA GOODMAN

This letter is to inform you of the actions that will be taken based on your hearing results.
The information below indicates the hearing decision:

The proposal to terminate your housing assistance has been upheld.

Your housing assistance has been terminated and the last payment to your landlord will be made
on 01/01/2017 .

This correspondence supersedes all other correspondences received from Housing Authority of DeKalb
County.

Sincerely,

Compliance Team
Housing Choice Voucher Program

**EXHIBIT**

F

tabbies

If you require special
communications in ·        ·accommodations due to a disability, including the need to receive documents or
                              ····· Choice at 404-270-2500. For Georgia Relay Service assistance dial 711.

MISSION: To provi·

lives.