**FILED 1/31/2017 12:39:41 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA**

### SUPERIOR COURT OF DEKALB COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| **ANGELA GOODMAN**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**THE HOUSING AUTHORITY OF DEKALB COUNTY and EUGENE WALKER, in his official capacity as its Executive Director,**<br><br>    **Defendants.** | **Civil Action Case Number** _17CV1816_____ |

### MOTION FOR TEMPORARY RESTRAINING ORDER
### AND INTERLOCUTORY INJUNCTION

Plaintiff asks this Court to issue a Temporary Restraining Order and Interlocutory Injunction requiring Defendants to reinstate Plaintiff's Section 8 Housing Choice voucher and to provide all assistance to which Plaintiff is entitled as a participant in good standing of the Section 8 Housing Choice Voucher Program under 42 U.S.C. § 1437f(o). The reasons for granting this relief are set forth in the following Brief and the accompanying Affidavit. Plaintiff respectfully requests that an emergency hearing on this Motion be set for Monday February 6 or Tuesday February 7, 2017.

Under Georgia law, a temporary restraining order may be granted without written or oral notice to the adverse party or his attorney where specific facts show that immediate and irreparable injury, loss, or damage will result before the opposing party can be heard in opposition and the applicant appropriately certifies her efforts to give notice to the opposing party. O.C.G.A. § 9-11-65(b). Plaintiff gave Defendants notice of the intent to file this Motion on January 5, 2017. If Defendants are unable to appear in this Court before the Motion is heard, Plaintiff requests that the Court issue a Temporary Restraining Order to reinstate Plaintiff's

-1-

TJ

Section 8 voucher. As shown in the Brief and the accompanying Affidavit, Plaintiff has shown that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition." O.C.G.A. § 9-11-65(b)(1).

## BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION

Ms. Angela Goodman, Plaintiff, has been a recipient of housing assistance from Defendant Housing Authority of DeKalb County ("HADC") and Defendant Eugene Walker ("Defendant Walker") (collectively, "Defendants") in the form of a Housing Choice ("Section 8") voucher. With this voucher, Plaintiff entered into a lease agreement with a private landlord, and rent subsidies, also known as Housing Assistance Payments, were paid to her landlord on her behalf. Defendants have terminated the Plaintiff's assistance without cause, effective January 31, 2017.

Simultaneously, Ms. Goodman's landlord filed a dispossessory action against her because HADC stopped paying its share of the monthly rent after the landlord failed to make repairs. Ms. Goodman and her landlord worked out a consent agreement: she agreed to move out voluntarily on January 19, 2017, and the landlord agreed to dismiss the dispossessory case against her. Since then, Plaintiff has been staying in a one-bedroom weekly hotel room with her family, which includes seven minor children and a disabled adult child. Plaintiff is struggling to pay the weekly hotel rental fee and cannot afford to lease a new apartment at the market rate. Without Section 8 assistance, the Plaintiff and her family are effectively homeless.

Defendants terminated Plaintiff's Section 8 voucher without affording her due process required by, among other state and federal laws, the Due Process clauses of the state and federal Constitutions, 42 U.S.C § 1437d(k), 24 C.F.R. § 982.555, and the Defendant Housing

-2-

Authority's own administrative plan. Although the Defendants provided Plaintiff with an informal hearing on the proposed termination, as required by 24 C.F.R. §§ 982.554, 982.555, the Defendants relied exclusively on unreliable hearsay and discounted the Plaintiff's own testimony controverting the hearsay evidence. Defendants did not present a single witness with firsthand knowledge of the allegations at issue. In addition, the hearing decision was not supported by the evidence presented, and at most the allegations consisted of *de minimus* violations of the Family Obligations.

Furthermore, Defendants decision to terminate Plaintiff's Section 8 voucher for missing just one re-inspection – despite her request for a reasonable accommodation due to her son's disability – constitutes a violation of the Americans with Disabilities Act, the Fair Housing Act, and Section 504 of the Rehabilitation Act.

Therefore, we ask this Court to preserve the status quo as it existed prior to Defendants' termination of Plaintiff's Section 8 voucher assistance and to order Defendants to reinstate immediately Plaintiff's Section 8 voucher.

## I.     BACKGROUND

### A.     LEGAL FRAMEWORK FOR THE FEDERALLY SUBSIDIZED SECTION 8 VOUCHER PROGRAM

Congress passed the United States Housing Act of 1937 (42 U.S.C. §§ 1437 *et seq.*; hereafter "the Act") "to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families." 42 U.S.C. § 1437(a)(1)(A). The Act, as amended, established several different federally subsidized housing programs to fulfill these objectives, among them the Section 8 Housing Choice Voucher Program ("Section 8"). 42 U.S.C. § 1437f(o).

The Act empowers and directs the United States Department of Housing and Urban Development ("HUD") to administer federal financial assistance for housing and authorizes the Secretary of HUD to provide federal subsidies to local public housing authorities (hereafter "PHAs") to help finance the operation of the Section 8 program.  42 U.S.C. §§ 1437b, 1437c, 1437f. HUD promulgates regulations to administer the Section 8 program. These regulations are codified at 24 C.F.R. Parts 982 *et seq.*

PHAs administering Section 8 must adopt a written administrative plan that establishes local policies for administration of the program in keeping with HUD's requirements. The PHA must administer the program in accordance with the plan and must also comply with applicable HUD regulations. 24 C.F.R. §§ 982.54, 982.153.

PHAs issue housing vouchers to each qualified family that applies, and the voucher entitles such a family to rent a housing unit approved by the housing authority from a private landlord. 24 C.F.R. § 982.302(a). The PHA then pays a share of the rent to the Landlord so that the tenant can afford the housing unit. When the PHA proposes to terminate a family's Section 8 assistance, the PHA must promptly notify the family of the reason for the proposed termination and afford the family an opportunity to request an informal hearing on the decision. 24 C.F.R. §§ 982.554, 982.555. The informal hearing procedures must comply with the requirements in the PHA's administrative plan and in HUD's regulations. *Id.* Factual determinations by hearing officers at informal hearings must be based on a preponderance of the evidence. *Id.*; 2013 Housing Choice Voucher Administrative Plan of the Housing Authority of DeKalb County, Georgia, at page 16-17 ("HADC Administrative Plan"). The burden of persuasion at informal hearings is on the PHA. *Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008).  If a participant

disagrees with a PHA's post-hearing decision, the participant can bring an action in state or federal court to challenge the decision.

### B. FACTS

Plaintiff and her eight children – seven of whom are minors, and one is a disabled young adult – are currently homeless directly because of Defendant HADC's unlawful administrative action.

On September 13, 2016, Defendant HADC notified Plaintiff that it proposed to terminate her family's Section 8 assistance for two reasons: (1) she failed to allow HADC to inspect the unit at a reasonable time after reasonable notice; and, (2) her family damaged the unit beyond normal wear and tear. Plaintiff timely requested a hearing. She also noted in her hearing request that she missed the emergency re-inspection scheduled for September 6, 2016 because her son with mental health problems was in the hospital. A re-inspection was completed on September 30, 2016. However, HADC found that the unit still failed inspection.

Defendant HADC held a hearing on November 3, 2016. At the hearing, the only evidence offered by HADC was the inspection notices, Plaintiff's lease, Plaintiff's voucher, and a list of the Family Obligations. The only witness testifying on behalf of Defendant HADC was Kentrye Cornelious, the Compliance Officer for the Section 8 Program. Ms. Cornelious did not claim to have any first-hand knowledge of the alleged violations. She merely tendered the inspection reports into evidence.

At the hearing, Plaintiff testified that she missed the emergency follow-up inspection scheduled for September 6, 2016 because her son was in the hospital at the time. However, she asked not to be terminated for missing a single re-inspection appointment and that the inspection be rescheduled as an accommodation for her son's disability. The follow-up inspection was

rescheduled and completed on September 30, 2016. However, HADC never provided a response to Plaintiff's reasonable accommodation request that she not be terminated for missing the September 6, 2016 re-inspection.

Plaintiff further testified that she completed all the repairs on the initial inspection list that were her responsibility. HADC alleged there were four items remaining for Plaintiff to fix at the time of the re-inspection: (1) a broken kitchen drawer, (2) a non-functioning smoke detector, (3) cracked glass on her main entrance door, and (4) missing hardware on her storm door. Plaintiff testified that she was not responsible for repairing the kitchen drawer, though she had tried to fix it and she had complained to the landlord about it in the past. She testified that the landlord tried to fix it as well, but he was unable to do so. Plaintiff further testified that she told her family not to use the drawer because it did not work properly. As for the smoke detector, Plaintiff testified that she replaced the all batteries in all the smoke detectors in the house. Despite replacing the batteries, at least one of the smoke detectors failed to work. She testified that she didn't believe it was her responsibility to fix a broken smoke detector. Regarding the front door, Plaintiff testified that she did not cause the front door glass to crack. She testified that it was cracked when she moved in, but the crack became bigger over time. She testified that she did not believe it was her responsibility to fix the cracked door glass. The parties did not present any evidence about the storm door hardware at the hearing.

Plaintiff testified that she has had many issues with her landlord refusing or failing to make repairs. She had complained to the landlord and to HADC on several occasions. In fact, HADC had put the rent in abatement starting October 1, 2016 because the landlord had failed to repair items for which he was responsible.

The hearing officer issued a decision on November 17, 2016 upholding the HADC's decision to terminate the family's assistance. The HADC notice states that the last payment to Ms. Goodman's landlord would be on January 1, 2017. This indicates that HADC did not intend to send any housing assistance payments to Plaintiff's landlord starting February 1, 2017.

Meanwhile, on November 15, 2016, Plaintiff's landlord filed a dispossessory action against her because Defendant HADC had put the property into abatement – that is, the HADC withheld its share of the monthly rent as a penalty – because the landlord had failed to make repairs. Plaintiff and her landlord worked out a consent agreement. She agreed to move out on January 19, 2017 voluntarily, and the landlord agreed to dismiss the dispossessory case against her.

Since Plaintiff moved out of the unit on January 19, 2017, she and her eight children have been staying in a one-room weekly hotel. Plaintiff cannot afford to pay market rent. She and her children are effectively homeless because HADC refuses to re-issue her voucher. Moreover, Plaintiff cannot afford to continue staying at the weekly hotel.

Plaintiff has signed the sworn Affidavit accompanying this brief, which affirms these facts. *See* Affidavit of Angela Goodman.

## II.   PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF REQUIRING THE HOUSING AUTHORITY OF DEKALB COUNTY TO REINSTATE HER SECTION 8 VOUCHER.

The purpose of an injunction is to prevent any act that is contrary to equity and good conscience and for which no adequate remedy is provided at law. O.C.G.A. § 9-5-1. The interlocutory injunction "is a device to keep the parties in order, and prevent one from hurting the other whilst their respective rights are under adjudication." *Milton Frank Allen Publ'ns, Inc. v. Georgia Ass'n of Petroleum Retailers, Inc.*, 223 Ga. 784, 788 (1967) (citations omitted). A

superior court should grant an interlocutory injunction in order to preserve the status quo if a balancing of the relative equities favors the party requesting the injunction. *Owens v. Ink Wizard Tatoos*, 272 Ga. 728, 729 (2000) (citations omitted). Although a Plaintiff need not show that there is a substantial likelihood of success on the merits for an injunction to issue, the merits are "proper criteria for the trial court to consider in balancing the equities." *R.D. Brown Contractors v. Bd. of Educ.*, 280 Ga. 201, 212 (2006).

A court should also consider "whether greater harm might result from refusing than from granting the relief prayed for." *Paer v. Guhl*, 236 Ga. 768, 769 (1976) (citations omitted). If the plaintiff shows greater harm would come from not granting a temporary injunction than from granting it, the Court should grant the injunction. *See id*.

### A.   NO ADEQUATE REMEDY AT LAW EXISTS

In the instant case, there is no adequate remedy at law. The Plaintiff has very limited income and cannot afford to pay for rental housing for herself, her seven minor children, and her disabled adult child without assistance. Plaintiff and her family have already lost their home and are temporarily staying in a one-bedroom weekly hotel room that Plaintiff is scarcely able to afford. If Defendants do not reinstate Plaintiff's Section 8 voucher, it is a near certainty that Plaintiff and her family will remain homeless. Monetary relief cannot adequately replace the loss of the family's housing and nor compensate a family for suffering homelessness.

### B.   A BALANCING OF THE EQUITIES FAVORS THE PLAINTIFF

No harm will come to Defendants by granting the requested injunctive relief, but Plaintiff and her family will suffer enormous irreparable harm if they are denied. It does not harm the Defendants to require them to provide Plaintiff with the due process already required by law and by Defendant HADC's own procedures. Moreover, the Defendants will suffer no harm if the

injunction is granted because Defendants have been providing Plaintiff assistance through the Section 8 program. Defendants need only reinstate Plaintiff's voucher so she can find a new, permanent home. Defendants would suffer no harm by paying Housing Assistance Payments to a new landlord.

The threat of eviction and homelessness constitute irreparable harm that merits injunctive relief. *See Bloodworth v. Oxford Village Townhouses*, 377 F. Supp. 709, 719 (N.D. Ga. 1974) (effective increase of fifty percent in housing costs may be tantamount to eviction or may impose substantial financial hardships on family sufficient to constitute irreparable harm); *see also Villas at Parkside Partners v. City of Farmers Branch*, No. 3:06-CV-2371-L, 2007 U.S. Dist. Lexis 36918, at *31–32 (N.D. Tex. May 21, 2007) (threat of eviction if anti-immigrant ordinance enforced constitutes irreparable harm); *Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1052 (S.D. Cal. 2006) (same); *Lozano v. City of Hazleton*, 459 F. Supp. 2d 332, 335 (M.D. Pa. 2006) (threat of eviction from home constitutes irreparable injury sufficient for temporary restraining order); *Mitchell v. U.S. Dep't of Hous. & Urban Dev.*, 569 F. Supp. 701, 704–5 (N.D. Cal. 1983) (scarcity of public housing constitutes irreparable harm sufficient to preliminarily enjoin eviction).

Plaintiff and her family will suffer the extreme harm and dangers of homelessness unless relief is granted, because they cannot afford to continue paying the weekly hotel in which they have found temporary shelter, nor can they afford to pay the market rate for adequate housing. Homelessness would have a lasting and, perhaps, permanent negative physical and psychological impact on the Plaintiff and their children, denying them stable homes, threatening their education, destabilizing the mental health of Plaintiff's disabled adult child, and subjecting them all to physical danger.

**C. THERE IS A SUBSTANTIAL LIKELIHOOD THAT PLAINTIFF WILL SUCCEED ON THE MERITS BECAUSE DEFENDANTS HAVE DENIED HER RIGHT TO DUE PROCESS AND ACTED IN VIOLATION OF FEDERAL AND STATE LAW.**

The Housing Authority has violated Plaintiff's rights by terminating her housing assistance without the basic due process required by the Fourteenth Amendment and the Supremacy Clause of the Constitution of the United States of America, Article One of the Constitution of the State of Georgia, and other federal and state statutes and regulations. Defendants have no authority to terminate her voucher based on unproven allegations of *de minimus* Housing Quality Standard violations. Furthermore, Defendants' decision to terminate Plaintiff's Section 8 voucher on the basis that she missed her first re-inspection meeting because of her son's disability violates the Fair Housing Act, Section 504 of the Rehabilitation Act, Title II of the ADA, and their affirmative obligation to further fair housing under the U.S. Housing Act.

The Plaintiff need only succeed on one of these grounds to justify judgment in her favor and an order requiring the Defendants to reinstate her Section 8 voucher assistance.

**1. The Defendant Housing Authority did not meet its burden of persuasion because the decision to terminate relied exclusively on unreliable hearsay evidence.**

Before denying housing assistance, such as a Section 8 voucher, or even effecting an interruption in the receipt of that assistance, the Fourteenth Amendment of the United States Constitution and Article One of the Georgia Constitution demand that a housing authority, or PHA, provide a tenant certain due process, namely, with timely notice and a hearing held at a meaningful time and conducted in a meaningful manner. *See* U.S. CONST. amend. XIV, § 1; GA. CONST. art. I, § 1, para. 1; *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 135 (2002) (holding that it is "undoubtedly true" that public housing recipients have a constitutionally

protected property interest in their public benefits); *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970) (finding that "the interest of the eligible [welfare] recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens," and thus a hearing and notice are required before a termination, or interruption, is effected).   Although the Georgia Constitution cannot provide fewer rights than those guaranteed in the U.S. Constitution, the Georgia Supreme Court has long made clear that Georgia's due process clause may provide even greater protections. *See National Mortgage Corp. v. Suttles*, 194 Ga. 768 (1942).

Federal regulations, promulgated under 42 U.S.C. § 1437f, 1437d(k) and 3535(d), impose specific due process requirements on PHAs when a denial or termination is proposed.  24 C.F.R. §§ 982.555, 982.554.  When a PHA refuses to provide Section 8 benefits due to a tenant's failure to act or a tenant's actions, Section 8 tenants are entitled to prompt written notice of a proposed decision and the reasons for it, a notice of the right to an informal hearing and the deadline for requesting the hearing, the informal hearing itself, a hearing officer that is impartial, and an expeditious written decision that states the reason for the decision.  *Id.*  These due process rights as expressed in the regulations are enforceable under 42 U.S.C. § 1983, the Supremacy Clause of the U.S. Constitution, and by writ of mandamus under O.C.G.A. § 9-6-20.

Morevoer, in *Basco v. Machin*, 514 F.3d 1177, 1183 (11th Cir. 2008), the 11th Circuit Court of Appeals found that a PHA must not only provide a hearing before termination, but also must "bear[] the burden of persuasion at an informal administrative hearing . . . to determine whether a Section 8 participant's housing subsidy should be terminated."   In that case, the Defendant Housing Authority violated a Section 8 voucher holder's due process rights when it

-11-

terminated her voucher for having unauthorized persons living in her unit solely based on two police reports. *Id.* at 1179. The Housing Authority presented no direct evidence to controvert the participant and her landlord's testimony that she did not have unauthorized persons living with her. *Id.* at 1180.

There are "limits on the extent to which an adverse administrative determination may be based on hearsay evidence." *Id.* at 1182. The *Basco* Court held that hearsay evidence may constitute substantial evidence in administrative proceedings only if (1) the out of court declarant was not biased and had no interest in the results of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpeonaed the declarant; (3) the information was not inconsistent on its face; and 4) the information has been recognized by the courts as inherently reliable. *Id.* (citing *JAM Builders v. Herman*, 233 F.3d 1350, 1354 (11th Cir. 2000). The Court stated that the Housing Authority in that case should not have based an adverse determination on the hearsay statements, as the tenants could not subpoena the police officers for cross examination, and that the police reports themselves were legally insufficient to terminate the tenant's Section 8 benefits. Hearsay evidence cannot on its own support a termination of a Section 8 voucher. *Id.* at 1183.

In the instant case, the Defendants similarly presented no direct evidence of the Plaintiff's violation of the Section 8 rules. Instead, the Defendants relied exclusively on unreliable hearsay in terminating the Plaintiff's voucher. In Plaintiff's termination hearing, she presented undisputed testimony that she repaired all items on the inspection report that were her responsibility. She also presented undisputed testimony that she did not damage the remaining items on the inspection report.

The hearing procedures also violated *Basco* because Plaintiff did not have an opportunity to subpoena any out-of-court declarants. *See id*. Neither HUD Section 8 procedures nor HADC procedures provide participants with the right to subpoena witnesses. Plaintiff had no way of compelling declarants, such as the inspectors who completed the inspection reports, to appear at the hearing so she could confront and cross-examine them. *See also Richardson v. Perales*, 402 U.S. 389, 407 (1971); *McClees v. Sullivan*, 879 F. 2d 451, 453 (8th Cir. 1989).

In addition to the *Basco* case and its progeny, the HADC's Administrative Plan addresses the use of hearsay at its informal hearings. Although the Administrative Plan allows hearsay to be "generally admissible," it explicitly states that "hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision." Administrative Plan, p. 16-16.  (Copy attached to Plaintiff's *Complaint* as Exhibit A.)

Yet, in Plaintiff's hearing, the hearing officer ignored the only direct evidence—the Plaintiff's own testimony. Instead, the hearing officer based the decision to terminate entirely on unreliable hearsay evidence that was inconsistent with the Plaintiff's first-hand testimony. Given that the Hearing Officer was not lawfully entitled to rely upon the hearsay testimony, and there was no other evidence presented by the Defendants upon which the Hearing Officer could have relied, Defendants failed to meet the burden of persuasion in Plaintiff's hearing. In the words of the *Basco* court, the Defendants failed to establish their *prima facie* case to uphold their decision to terminate the Plaintiff's housing voucher.

### 2.    The Defendants violated the Fair Housing Act, Section 504 of the Rehabilitation Act, and Title II of the ADA, and the Housing Act.

Defendants' decision to terminate Plaintiff's Section 8 voucher on the basis that she missed her first re-inspection appointment because of her son's disability violates the Fair Housing Act (42 U.S.C. §§ 3601 *et seq*.) (FHA), Section 504 of the Rehabilitation Act of 1973

-13-

(29 U.S.C. § 794) (RA), and Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12131 et seq.) (ADA), and its duty, under 42 U.S.C. §§ 1437c-1(b)(3)(B), 1437c-1(d)(16), to affirmatively further fair housing.

Plaintiff requested a reasonable accommodation for her son's disability when she asked not to be terminated for missing a single re-inspection appointment because her son was in the hospital. In moving forward with the termination without considering Plaintiff's request, Defendants discriminated on the basis of a household member's disability. Plaintiff has been economically and irreparably harmed by Defendants' actions and is entitled to injunctive and declaratory relief and monetary damages in an amount to be determined at trial.

## III.     THE COURT SHOULD NOT REQUIRE SECURITY FROM THE PLAINTIFFS

The Court has the discretion to allow Plaintiff to proceed without requiring a security or bond. *See* O.C.G.A. § 9-11-65(c). Given the high likelihood of success on the merits, Plaintiff's status as a recipient of public assistance, the small impact on the Defendants, and the fact that the injunction seeks merely to require Defendants to maintain the status quo, no security or bond should be required.

## IV.     CONCLUSION

For the foregoing reasons, this Court should grant a temporary restraining order and interlocutory injunctive relief requiring Defendants to reinstate Plaintiff's Section 8 Housing voucher assistance while this action is pending, and to provide all other services that she would otherwise be entitled to as a participant in good standing of the Section 8 voucher program.

Respectfully submitted this 31st day of January, 2017.

*/s/ Lindsey M Siegel*
Lindsey M. Siegel (#730072)

-14-

/s/ Jessica D. Felfoldi
Jessica D. Felfoldi (#442858)

Attorneys for Plaintiff

Atlanta Legal Aid Society, Inc.
246 Sycamore Street, Suite 120
Decatur, GA 30030
Phone: (770) 817-7522 (Siegel)
          (770) 817-7529 (Felfoldi)
Fax:     (404) 377-2349
lmsiegel@atlantalegalaid.org
jdfelfoldi@atlantalegalaid.org

-15-