## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **ANGELA GOODMAN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **1:17-CV-00504-TWT** |
| **HOUSING AUTHORITY OF** | : | |
| **DEKALB COUNTY and EUGENE** | : | |
| **WALKER in his official capacity as its** | : | |
| **Executive Director,** | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Plaintiff Angela Goodman, by and through her attorneys Lindsey Siegel and Jessica Felfoldi of Atlanta Legal Aid Society, files this statement of material facts in support of her Motion for Summary Judgment against Defendants Housing Authority of DeKalb County ("Housing Authority") and Eugene Walker in his official capacity, on the issue of liability, under L.R. 56.1.

### Background

1.  Ms. Goodman has been a participant in the Section 8 housing choice voucher program ("Section 8 program") for over nineteen years. (Goodman Aff. ¶ 10a, Doc. 1-1; Transcript of Angela Goodman Testimony from TRO

Hearing on Feb. 21, 2017 ("TRO Tr.") 6:14-17).

2.      Ms. Goodman has been a participant with the Housing Authority of DeKalb

County's Section 8 program for over fifteen years.  (TRO Tr. 45:17-19.)

3.      Ms. Goodman lived in a five-bedroom house at 6047 Marbut Road from

March 1, 2012 until January 19, 2017.  (TRO Tr. 6:22, 7:3-4, 7:13;

Goodman Aff. ¶ 16; Goodman Lease ¶ 1 (Ex. A).)

4.      When she moved in, Ms. Goodman paid a $400 security deposit to her

landlord.  (Goodman Lease ¶ 6.)

5.      Ms. Goodman is the primary caretaker for, and lives with, her seven minor

children and her disabled adult son.  (TRO Tr. 4:16-22; Goodman Aff. ¶ 2.)

6.      In the fall of 2016, Ms. Goodman's rent portion to the landlord was zero,

and the Housing Authority's portion to the landlord was approximately

$1000.  (TRO Tr. 7:20-23; Goodman Aff. ¶ 15.)

**Repair Issues at Ms. Goodman's Home**

7.      Ms. Goodman was not present for the Housing Authority's 2012 initial

inspection of her home, and she has never seen the initial inspection report.

(TRO Tr. 9:7-8, 13-18; Cornelious Dep. 19:5-6 (Applicable Excerpts

Attached as Ex. B); February 19, 2018 Declaration of Angela Goodman

under Fed. R. Civ. P 56(c)(4) "Goodman Decl." ¶¶ 2-3 (Ex. C).)

2

8.    Ms. Goodman experienced many problems with repair issues in her home over the years.  (Goodman Aff. ¶ 10f.)

9.    Ms. Goodman had problems at the property when she first moved in, including: a leaking kitchen sink, broken garage doors, water collecting in the driveway, a small crack in the front door window, a water leak under the bathroom tub, a broken garbage disposal, and rotten cabinets.  (TRO Tr. 8:5-9:3.)

10.   During her tenancy, Ms. Goodman had various repair issues at the home, including: broken garage doors, sliding doors that did not lock, an oven that did not work, and a refrigerator that failed to keep food cold (TRO Tr. 18:8-13, 24:12-13, 21:25-22:2.)

11.   For several months, Ms. Goodman could hear rats scratching behind her walls and below her floor; eventually the rats burrowed through the floor and walls into her home.  (TRO Tr. 9:25-15:25; Goodman Nov. 17, 2015 email to landlord, Doc. 5-2; Goodman Dec. 18, 2015 email to landlord, Doc. 5-3; Goodman Dec. 20, 2015 email to landlord, Doc. 5-4; Pictures of rat holes, Docs. 5-5, 5-6, 5-7.)

12.   Ms. Goodman complained to her landlord repeatedly about the various repair problems in her home.  (Goodman Nov. 17, 2015 email to landlord,

Doc. 5-2; Goodman Dec. 18, 2015 email to landlord, Doc. 5-3; Goodman
Dec. 20, 2015 email to landlord, Doc. 5-4; Goodman May 2, 2016 email to
landlord, Doc. 5-9; Goodman Sept. 12, 2016 email to landlord, Doc. 5-16;
Goodman Oct. 5, 2016 email to landlord, Doc. 5-11; TRO Tr. 10:13-18,
13:14-22, 17:1-9, 18:11-13, 19:6-9, 20:15-24, 22:1-4, 24:10-15, 25:2-13.)

13.   Ms. Goodman's landlord often failed to make timely repairs.  (Goodman
Decl. ¶¶ 4-5.)

14.   When the landlord replaced Ms. Goodman's cabinets with new ones, there
was an installation defect where one drawer would knock into another one
when it was opened, causing the open drawer to be knocked off its tracks.
(TRO Tr. 18:17-19:5.)

15.   Ms. Goodman complained to her landlord about the defective drawer at the
time it was installed, but the landlord never properly fixed it.  (TRO Tr.
19:6-9; Goodman Aff. ¶ 10c.)

16.   The front door window crack existed from the date she moved into the
home, but it was small at first.  (TRO Tr. 23:10-11.)

17.   The front door window crack grew over time, but Ms. Goodman and her
children did not do anything outside normal use to cause it to get worse.
(TRO Tr. 23:15-19; Goodman Aff. ¶ 10e.)

4

18.   The crack in Ms. Goodman's front door window was contained within two glass panels.  (TRO Tr. 23:4-8.)

19.   Ms. Goodman's storm door handle was old when she moved in; the screws did not properly tighten, so the handle eventually fell off the door.  (TRO Tr. 23:25, 24: 3-6).

20.   Ms. Goodman and her children did not do anything to cause the storm door handle to fall off.  (TRO Tr. 24:1-2.)

21.   Ms. Goodman complained to the Housing Authority on several occasions about her repair problems.  (Goodman Oct. 5, 2016 email to landlord, Doc. 5-11; TRO Tr. 22:1-13, 26:1-12; Goodman Aff. ¶ 10f.)

22.   On August 18, 2016, Ms. Goodman submitted an Emergency Inspection Complaint Request to the Housing Authority, complaining about the conditions in her home. (Goodman Aug. 18, 2016 Emergency Inspection Complaint Request (Ex. D).)

### Housing Authority Inspections

23.   The Housing Authority uses a third-party inspection agency, McCright & Associates, to conduct its inspections of participants' homes. (Cornelious Dep. 17:3-7; Def.'s Second Suppl. Resp. to Pl.'s First Interrog. No. 12 (Ex. E).)

5

24.   The Housing Authority began using McCright & Associates to conduct its inspections in December 2012, which was nine months after Ms. Goodman moved into the home.  (Def.'s Second Suppl. Resp. to Pl.'s First Interrog. No. 12; Goodman Lease, ¶ 1.)

25.   The Housing Authority does not have a copy of the initial inspection report for Ms. Goodman's home.  (Def.'s Resp. to Pl.'s Third Req. for Prod. No. 2 (Ex. F).)

26.   From January 2015 to May 2017, the Housing Authority paid McCright & Associates $432,446.11 to conduct inspections of participants' homes. (Def.'s Second Suppl. Resp. to Pl.'s First Interrog. No. 12.)

27.   From January 2015 to May 2017, McCright & Associates conducted 26,304 inspections for the Housing Authority.  (Def.'s Second Suppl. Resp. to Pl.'s First Interrog. No. 12.)

28.   The Housing Authority does not train McCright & Associates inspectors on how to conduct its inspections.  (Cornelious Dep. 191:19-192:5.)

29.   The Housing Authority does not provide any training materials or other instructions to McCright & Associates beyond a copy of its Administrative Plan.  (Cornelious Dep. 191:25-192:4; Def.'s Suppl. Resp. to Pl.'s First Req. for Prod No. 11 (Ex. G).)

6

**Ms. Goodman's Fall 2016 Inspections**

30.    On September 2, 2016, a McCright & Associates inspector named Jamaine Greenberg conducted an annual inspection of Ms. Goodman's home; he issued the report on September 3, 2016.  (Sept. 3, 2016 Inspection Report, Doc. 5-14.)

31.    Greenberg listed the following repairs as "tenant charges": outlet cover missing behind refrigerator, smoke detector needs battery-hallway, smoke detector needs battery-basement, private locks-bedrooms 1 and 4, door off hinges-bedroom 5, front storm door hardware missing, glass cracked-front door exterior, kitchen cabinet drawer broken next to stove.  (Doc. 5-14, p. 2-3.)

32.    The report did not contain any notes or indications as to why items were designated owner responsibility or "tenant charge."  (Doc. 5-14, p. 1-3.)

33.    Ms. Goodman understood that "tenant charge" meant the Housing Authority expected her to fix an item, but not why she was being held responsible.

34.    The inspection listed four 24-hour emergency repairs and eighteen routine repairs that caused the unit to fail the inspection.  (Doc. 5-14, p. 2-3.)

35.    The inspection explained that the Housing Authority would abate its portion of the rent to the landlord if the repairs were not completed in a timely way.

7

(Doc. 5-14, p. 1.)

36. On September 6, 2016, Greenberg returned for a re-inspection of the emergency repairs, but no one was home; he issued the report on September 7, 2016.  (Sept. 7, 2016 Insp. Rep., Doc. 5-15.)

37. On September 13, 2016, the Housing Authority issued a proposed termination notice to Ms. Goodman that listed two violations: (1) missing the re-inspection and (2) damage beyond normal wear and tear.  (Sept. 13, 2016 Proposed Term. Notice, Doc. 5-17, p. 1.)

38. Before her next inspection, Ms. Goodman fixed the items she was responsible for breaking or altering: she replaced the broken outlet cover and removed the private locks from the bedroom doors.  (TRO Tr. 32:18-25; Goodman Decl. ¶ 8.)

39. On September 19, 2016, Ms. Goodman requested an informal hearing on the proposed termination, and gave a brief explanation related to her son's "mental health" as to why she missed the inspection; in the request, she said she had completed the repairs.  (Sept. 19, 2016 Req. for Informal Hr'g, Doc. 5-18.)

40. On September 30, 2016, Greenberg conducted a re-inspection of Ms. Goodman's home; he issued the report on October 3, 2016.  (Oct. 3, 2016

8

Insp. Rep., Doc. 5-19.)

41. The reinspection showed that four items listed as "tenant charge" remained
unrepaired: (1) the smoke detector hallway needs battery; (2) kitchen cabinet
drawer next to the stove broken; (3) front storm door hardware missing; and
(4) glass cracked front door exterior.  (Oct. 3, 2016 Insp. Rep., Doc. 5-19, p.
2.)

42. The reinspection showed that four items listed as the landlord's
responsibility remained unrepaired, including the inoperable stove and the
leaking refrigerator.  (Oct. 3, 2016 Insp. Rep., Doc. 5-19, p. 2.)

43. The reinspection explained that the Housing Authority would begin the
process of terminating the HAP contract because of the landlord's failure to
repair.  (Oct. 3, 2016 Insp. Rep., Doc. 5-19, p. 1.)

44. Ms. Goodman replaced the batteries in both smoke detectors at the
September 30, 2016 inspection, in front of the inspector.  (TRO Tr. 33:12-
17, 34:14-35:1.)

45. When Ms. Goodman replaced the batteries in both smoke detectors with new
ones, one smoke detector worked, but the other did not work.  (TRO Tr.
33:12-17, 34:14-35:1.)

46. On October 25, 2016, a McCright & Associates inspector named Edress

Jenkins conducted a complaint inspection of Ms. Goodman's home; he issued the report on October 26, 2016.  (Oct. 26, 2016 Insp. Rep. (Ex. H).)

47.     The October 26, 2016 report listed two items designated as "tenant charge": no light bulb in the living room and a loose stair rail baluster.  (Oct. 26, 2016 Insp. Rep., p. 2.)

48.     The October 26, 2016 report lists five items as the landlord's responsibility, including "screen dr hdwr does not close."  (Oct. 26, 2016 Insp. Rep., p. 2.)

49.     On November 22, 2016, Jamaine Greenberg conducted a complaint re-inspection of Ms. Goodman's home; he issued the report on November 23, 2016.  (Nov. 23, 2016 Insp. Rep. (Ex. I).)

50.     The November 23, 2016 report lists no outstanding repairs; it states, "Your unit inspection resulted in a Pass rating per HQS."  (Nov. 23, 2016 Insp. Rep., p. 1-2.)

### Ms. Goodman's Termination Hearing

51.      Ms. Goodman's informal hearing on the proposed termination of her section 8 voucher occurred on November 3, 2016.  (Nov. 17, 2016 Hearing Decision, Doc. 5-23, p. 1.)

52.     The informal hearing was not recorded.  (Goodman Aff. ¶ 7.)

53.   The Housing Authority's only witness was Kentrye Cornelious, the Housing Choice Voucher Compliance Officer.  (Doc. 5-23, p. 1.)

54.   The hearing was conducted by Turkia Hill, the Administrative Hearing Officer.  (Doc. 5-23, p. 1.)

55.   The only documents Ms. Cornelious introduced at the hearing were: the family obligations; Form HUD-52646 (Ms. Goodman's voucher); the inspection reports from September 3, 2016, September 7, 2016, and October 3, 2016; and Ms. Goodman's lease.  (Doc. 5-23, p. 2; Cornelious Dep. 49:13-50:8; Goodman Aff. ¶ 8.)

56.   The only evidence the Housing Authority relied on to support the termination were the three inspection reports from McCright: September 3, 2016, September 7, 2016, and October 3, 2016.  (Doc.5-23, p. 2, 6.)

57.   Ms. Cornelious did not have any firsthand knowledge of the conditions in Ms. Goodman's home.  (Cornelious Dep. 105:9-15, 127:9-21; Goodman Aff. ¶ 9.)

58.   No inspectors from McCright & Associates were present at Ms. Goodman's hearing.  (Cornelious Dep. 127:22-24; Goodman Aff. ¶ 9.)

59.   Ms. Goodman's landlord was not present at the hearing.  (Cornelious Dep. 127:25-128:1; Goodman Aff. ¶ 9.)

60.  Ms. Goodman's property manager was not present at the hearing.
(Cornelious Dep. 127:7-8, 128:2-4; Goodman Aff. ¶ 9.)

61.  The only witness present at the hearing with firsthand knowledge of the
conditions in the home was Ms. Goodman.  (Cornelious Dep. 105:9-15,
127:5-128:4, 142:14-22; Goodman Aff. ¶ 9-10; TRO Tr., 36:17-19.)

62.  At her informal hearing, Ms. Goodman testified that the kitchen drawer did
not work properly because of an installation defect, so she told her children
not to use it. (Cornelious Dep. 101:19-102:6; Goodman Aff. ¶ 10c.)

63.  At her informal hearing, Ms. Goodman testified that she replaced both
smoke detector batteries, but one still did not work.  (Cornelious Dep.
131:16-20; Hill Dep. 55:6-13 (Applicable Excerpts Attached as Ex. J);
Goodman Aff.¶ 10d.)

64.  At her informal hearing, Ms. Goodman testified that the front door glass had
always been cracked since she moved in, and she did not break it.  (Hill Dep.
29:3-6; Cornelious Dep. 139:3-5; Goodman Aff. ¶ 10e.)

65.  The hearing officer did not base her decision on the broken storm door
hardware because, as she recalled, Ms. Goodman testified that she fixed it
before the hearing.  (Hill Dep. 35:1-6, 35:11-13, 37:3-13.)

66.   Ms. Goodman believed if she fixed the remaining items listed as "tenant charge" after she left the hearing, she could keep her voucher.  (TRO Tr. 38:5-9.)

67.   Ms. Goodman fixed the storm door handle at some point before she moved out of the home, even though she did not break it.  (TRO Tr. 24:1-2, 38:21-25; Picture of storm door handle, Doc. 5-21; Goodman Decl. ¶¶ 6, 9.)

68.   The Housing Authority's Administrative Plan states, "Even though evidence, including hearsay, is generally admissible, hearsay evidence alone cannot be used as the sole basis for the hearing officer's decision." (Housing Authority of DeKalb County Administrative Plan, Ch. 16 "Informal Hearings for Participants," Doc. 5-28, p. 6.)

69.   The Housing Authority's informal hearing procedures do not contain any method for a participant to subpoena a witness.  (Doc. 5-28, p. 1-27.)

**Hearing Decision**

70.   On November 17, 2016, the hearing officer issued a decision upholding Ms. Goodman's proposed termination from the section 8 program.  (Hearing Decision, Doc. 5-23, p. 6.)

71.   The Housing Authority's practice is to automatically adopt the decision issued by the hearing officer.  (Cornelious Dep. 32:25-33:10.)

13

72.   On December 1, 2016, the Housing Authority sent Ms. Goodman a notice indicating that her housing assistance was being terminated and the last payment to her landlord would be January 1, 2017.  (Hearing Results - Housing Assistance Termination, Doc. 5-24.)

### Post-Hearing

73.   After the hearing and before she moved out of the home, Ms. Goodman repaired the front door glass.  (TRO Tr. 38: 12-18; Picture of front door, Doc. 5-20.)

74.   Ms. Goodman spent $20 on the glass repair.  (TRO Tr. 39:9-10.)

75.   After the hearing and before she moved out of the home, Ms. Goodman purchased and installed a new smoke detector in the hallway.  (TRO Tr. 39:1-7; Picture of smoke detector, Doc. 5-22.)

76.   Ms. Goodman spent $20 on the smoke detector.  (TRO Tr. 39:9.)

77.   Ms. Goodman spent approximately $10-15 on the storm door hardware. (Goodman Decl. ¶ 6.)

78.   Ms. Goodman did not attempt to fix the broken kitchen drawer before she moved out because it had an installation defect and the landlord had already tried, unsuccessfully, to fix it several times.  (Goodman Decl. ¶ 10.)

79.   The Housing Authority terminated the Housing Assistance Payment contract

with Ms. Goodman's landlord for the landlord's failure to repair.
(Cornelious Dep. 220:23-221:7; HAP Contract Final Termination Notice
(Ex. K).)

80. Ms. Goodman's landlord filed an eviction case against her because the
Housing Authority had not paid the rent.  (TRO Tr. 41:4-7.)

81. To avoid having an eviction on her record, Ms. Goodman reached an
agreement with the landlord to leave voluntarily by January 19, 2017.  (TRO
Tr. 41:8-18.)

82. On January 18-19, 2017, Ms. Goodman and her eight children moved out of
the home and into a one-room extended stay motel.  (TRO Tr. 41:22-42:1.)

83. Ms. Goodman and her family lived in three different one-bedroom extended
stay motels from January 18, 2017 to April 27, 2017.  (Goodman Decl. ¶
11.)

Respectfully submitted this 20th day of February, 2018.

/s/ Lindsey M Siegel
Lindsey M. Siegel (Ga Bar No. 730072)
/s/ Jessica D. Felfoldi
Jessica D. Felfoldi (GA Bar No. 442858)
/s/ Charles R. Bliss
Charles R. Bliss (GA Bar No. 063385)
Attorneys for Plaintiff

Atlanta Legal Aid Society, Inc.

246 Sycamore Street, Suite 120
Decatur, GA 30030
Phone:        (770) 817-7522 (Siegel)
                  (770) 817-7529 (Felfoldi)
                  (404) 614-3988 (Bliss)
Fax:           (404) 377-2349
lmsiegel@atlantalegalaid.org
jdfelfoldi@atlantalegalaid.org
crbliss@atlantalegalaid.org

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that Plaintiff's Statement of Material Facts as to Which there is No Genuine Issue to be Tried has been prepared in Times New Roman (14 point) font, as approved by the Court in L.R. 5.1.B.

This 20th day of February, 2018.

*/s/* Lindsey M. Siegel
Lindsey M. Siegel (GA Bar No. 730072)

## CERTIFICATE OF SERVICE

I certify that on this day a true and correct copy of Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue to be Tried was sent through the electronic filing system to the following counsel of record for Defendants:

Catherine Gibson McCauley, Esq.
1708 Briarcliff Road, NE
Atlanta, GA 30306
Telephone:  (404) 733-6700
Facsimile:   (404) 733-6007

16

James E. Dearing, Esq.
730 Peachtree Street, NE, Suite 560
Atlanta, GA 30308
Telephone:  (404) 870-0010
Facsimile:   (404) 870-0008

This 20th day of February, 2018.

*/s/* Lindsey M. Siegel
Lindsey M. Siegel (GA Bar No. 730072)