IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANGELA GOODMAN,

   Plaintiff,

v.

THE HOUSING AUTHORITY OF
DEKALB COUNTY, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:17-CV-504-TWT

## OPINION AND ORDER

This is an action under the Fair Housing Act. It is before the Court on the Plaintiff Angela Goodman's Motion for Partial Summary Judgment [Doc. 72] and the Defendants' Motion for Summary Judgment [Doc. 73]. For the following reasons, the Plaintiff's Motion for Partial Summary Judgment [Doc. 72] is GRANTED, and the Defendants' Motion for Summary Judgment [Doc. 73] is GRANTED in part and DENIED in part.

### I. Background

The Plaintiff, Angela Goodman, is a Georgia resident who participates in the Defendant Housing Authority of DeKalb County's Section 8 Voucher Program. She has been a participant of the program for over fifteen years, and until January 19, 2017, resided in a five-bedroom house in Lithonia, Georgia

with her eight children.[1] This case stems from the Housing Authority's efforts to terminate Ms. Goodman from the Section 8 program in the fall of 2016.

From the time Ms. Goodman moved into the house in 2012, she experienced many problems at the Property, including sliding doors that did not lock, an oven that did not work, and a refrigerator that failed to keep food cold.[2] Ms. Goodman complained to her landlord repeatedly about the various problems at the Property, but the landlord often failed to make repairs timely or correctly.[3] In one particular example, the landlord defectively installed new kitchen cabinets such that one drawer would consistently knock into another when it was opened, causing the open drawer to be knocked off its tracks.[4] When Ms. Goodman complained about the drawer, the landlord never properly fixed it.[5]

On September 2, 2016, an inspector from the Housing Authority's inspection contractor conducted an annual inspection of Ms. Goodman's home, and issued a report the following day.[6] The inspector listed eighteen repairs in

---

[1] Pl.'s Statement of Mat. Facts ¶ 2; Def.'s SMF ¶ 4.

[2] Pl.'s SMF ¶ 10.

[3] *Id.* at ¶¶ 12-13.

[4] *Id.* at ¶ 14.

[5] *Id.* at ¶ 15.

[6] *Id.* at ¶ 30.

total, including eight repairs designated as "tenant charges."[7] A "tenant charge" means those repairs the inspector believes to be the tenant's responsibility. The tenant charges included: an outlet cover that was missing, two smoke detectors that needed new batteries, private locks on two of the bedrooms, a door that was off its hinges, a front storm door that was missing a handle and had cracked glass, and the broken kitchen drawer mentioned above.[8] Three of these tenant charges were designated as "24-hour emergency repairs," meaning those repairs that created an imminent hazard and needed to be repaired immediately. These included the missing outlet cover, and the two non-operational smoke detectors.[9] The report explained that the Housing Authority would abate its portion of the rent if the repairs were not completed in a timely manner, but did not contain any notes or indications as to why any of these items were listed as tenant charges.[10] The report also included a telephone number to call in case Ms. Goodman had "questions regarding the letter or the inspection results . . . ."[11]

---

[7] *Id.* at ¶ 31.

[8] *Id.*

[9] *Id.* at ¶ 34. There were technically four separate line items listed as 24-hour Emergency Repairs on the September 3rd report. *See* Sept. 3, 2016 Report, at 2 [Doc. 5-14]. However, as the inspector explained in his deposition, one of these line items – "there is not a smoke detector installed on each floor of the unit" – shows up any time there is any problem with a smoke detector, regardless of whether that specific line item is relevant to that particular inspection. Greenberg Dep. 45:17 - 46:25 [Doc. 85-4].

[10] Pl.'s SMF ¶¶ 32, 35.

[11] September 3, 2016 Inspection Report, at 1.

On September 6, 2016, the inspector returned for a re-inspection of the emergency repairs, but no one was home; he then issued the report the following day.[12] On September 13, 2016, the Housing Authority issued a proposed termination to Ms. Goodman, listing two violations: (1) missing the re-inspection, and (2) damage beyond normal wear and tear.[13] On September 19, 2016, Ms. Goodman requested an informal hearing on the proposed termination, explaining that she missed the inspection because of her son's medical condition, and noted that she had completed the repairs she was responsible for breaking or altering, namely the broken outlet cover and the private locks on the bedrooms.[14]

On September 30, 2016, the inspector conducted a re-inspection of the Property, and issued a report on October 3, 2016.[15] This new report noted that four items previously listed as tenant charges still were not repaired, including the broken kitchen cabinet, the missing handle and broken glass on the storm door, and a smoke detector that still needed a new battery.[16] Ms. Goodman replaced the batteries in both smoke detectors in front of the inspector, but one

---

[12] Pl.'s SMF ¶ 36.

[13] *Id.* at ¶ 37.

[14] *Id.* at ¶¶ 38-39.

[15] *Id.* at ¶ 40.

[16] *Id.* at ¶ 41.

still did not work.[17] Four items that had been previously listed as landlord charges also remained unrepaired, including an inoperable stove and leaking refrigerator.[18]

On November 3, 2016, the Housing Authority held an informal hearing on the proposed termination of Ms. Goodman's Section 8 voucher.[19] No inspectors from the Housing Authority's inspection contractor were present at the hearing, nor was Ms. Goodman's landlord or property manager.[20] The Housing Authority's sole witness was Kentrye Cornelious, the Housing Choice Voucher Compliance Officer, who had no firsthand knowledge of the Property.[21] The only witness at the hearing who did have such knowledge was Ms. Goodman.[22] At the hearing, she testified that the front door glass had always been cracked since she moved in, and that she did not break it.[23] The Housing Authority's only evidence to the contrary was the three inspection reports.[24]

---

[17] *Id.* at ¶ 44.

[18] *Id.* at ¶ 42.

[19] *Id.* at ¶ 51.

[20] *Id.* at ¶¶ 58-60.

[21] *Id.* at ¶¶ 53, 57.

[22] *Id.* at ¶ 61.

[23] *Id.* at ¶¶ 64-65.

[24] *Id.* at ¶ 55.

On November 17, 2016, the Hearing Officer issued a decision upholding Ms. Goodman's proposed termination from the Section 8 program, relying solely on the three inspection reports from September 3, September 7, and October 3, 2016.[25] The decision stated that she was terminated because "[t]he items that initially failed continued to be in failed status due to Ms. Goodman's failure to repair the items. Ms. Goodman failed to provide true and accurate information regarding the repairs, thus causing a third inspection to be performed to no avail."[26] After the hearing, however, the Property did pass inspection on November 23, 2016.[27]

Despite this, on December 1, 2016, the Housing Authority notified Ms. Goodman that her housing assistance was being terminated, and that the last payment to her landlord would be January 1, 2017.[28] The Housing Authority also terminated its contract with Ms. Goodman's landlord for the landlord's failure to repair the many defects that had been noted in the inspection reports.[29]

After the new year, Ms. Goodman's landlord filed an eviction case against her for failure to pay rent, and in order to avoid an eviction on her record, Ms.

---

[25] *Id.* at ¶ 70.

[26] Housing Authority Decision, at 6 [Doc. 5-23].

[27] Def.'s SMF ¶ 45.

[28] Pl.'s SMF ¶ 72.

[29] *Id.* at ¶ 79.

Goodman agreed that she would move out by January 19, 2017.[30] She filed this action in the Superior Court of DeKalb County, which the Housing Authority removed to this Court. Upon removal, Ms. Goodman moved for a temporary restraining order and preliminary injunction, which the Court granted on February 23, 2017, after conducting a hearing. The Court's Order directed the Housing Authority to immediately reinstate Ms. Goodman's Section 8 voucher and to provide her with all other benefits to which she is entitled under the program until the case could be fully adjudicated.[31]

In her Complaint, Ms. Goodman alleges numerous claims under 42 U.S.C. § 1983 against the Housing Authority and its Executive Director in his official capacity, including for violations of her due process rights under the Fourteenth Amendment to the U.S. Constitution, violations of the Housing Act, 42 U.S.C. § 1437f, and its implementing regulations, violations of the Housing Authority's Administrative Plan, and violations of her right to a reasonable accommodation for her son's disability under 29 U.S.C. § 794, 42 U.S.C. § 3601, and 42 U.S.C. § 12131. She also alleges violations of the Due Process Clause of the Georgia Constitution. She seeks declaratory, injunctive, and compensatory remedies, in addition to attorney's fees. Ms. Goodman now moves for partial summary judgment on all of her claims but her discrimination claim. Separately, the

---

[30] *Id.* at ¶ 82.

[31] February 22, 2017 Order on Pl.'s Mot. for TRO and Prelim. Inj. [Doc. 6].

Housing Authority moves for summary judgment on all of Ms. Goodman's claims.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[32] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[33] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[34] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[35] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."

## III. Discussion

### A. Violations of the Due Process Clause and the Housing Act of 1937

In four of her five complaints, Ms. Goodman alleges that the Defendants violated her procedural due process rights guaranteed under the United States

---

[32] FED. R. CIV. P. 56(a).

[33] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[34] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

and Georgia Constitutions, as well as the federal Housing Act of 1937 and its implementing regulations for terminating her without good cause. Georgia courts seem to suggest that the Georgia Constitution implies its own causes of action.[36] 42 U.S.C. § 1983, meanwhile, guarantees a private right of action against any state actor who abridges "any rights, privileges, or immunities secured by the [federal] Constitution and laws . . . ."[37] "Private individuals may bring lawsuits to enforce not only constitutional rights but also rights created by federal statutes" and regulations.[38] Although violations of the Fourteenth Amendment have been consistently recognized as a viable basis for Section 1983 actions, Eleventh Circuit jurisprudence involving Section 1983 and the Housing Act of 1937 has been more of a mixed bag.[39]

In *Basco*, described in more detail below, the Eleventh Circuit found in favor of plaintiffs "alleging deprivations of their right to procedural due process

---

[36] *See, e.g.*, *Atlanta City School Dist. v. Dowling*, 266 Ga. 217, 218 (1996) (discussing procedural due process guarantees of United States and Georgia Constitutions together, but only discussing applicability of Section 1983, which does not apply to the Georgia Constitution).

[37] 42 U.S.C. § 1983.

[38] *Stevenson v. Willis*, 579 F. Supp. 2d 913, 921 (N.D. Ohio 2008) (citing *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)).

[39] *See, e.g., Basco v. Machin*, 514 F.3d 1177, 1180 (11th Cir. 2008) (finding in favor of participants "alleging deprivations of their right to procedural due process under 24 C.F.R. § 982.555(e)(5) and (6), and 42 U.S.C. § 1983."). *But see Lane v. Fort Walton Beach Housing Authority*, 518 Fed. Appx. 904, 914 (11th Cir. 2013) (finding that at least some aspects of the Housing Act of 1937 do *not* provide a federal right enforceable via Section 1983).

under 24 C.F.R. § 982.555(e)(5) and (6), and 42 U.S.C. § 1983."[40] However, when the court did so, it did not specify whether it was finding in their favor on constitutional grounds, statutory grounds, or both. A few years later, the Eleventh Circuit said in an unpublished opinion that the Housing Act of 1937 and its implementing regulations do not establish rights enforceable under Section 1983, and it evaluated *Basco* solely as a constitutional case.[41] Other courts have done the same.[42] Given these subsequent opinions, the Defendants are entitled to have the Plaintiff's claims which rest solely on the Housing Act and its implementing regulations dismissed.

When it comes to her constitutional due process claims, however, Ms. Goodman rests on much more solid ground. The central requirements of the Due Process Clause are notice "and opportunity for a hearing at a meaningful time and in a meaningful manner."[43] The implementing regulations of the Housing Act of 1937 satisfy this requirement by providing Section 8 participants the opportunity to challenge termination of their vouchers in an informal hearing.[44]

---

[40] *Basco*, 514 F.3d at 1180.

[41] *Lane*, 518 Fed. Appx. at 910-15.

[42] *See, e.g., Johnson v. Fort Walton Beach Hous. Auth.*, No. 3:11CV506-MCR/EMT, 2012 WL 10688344, at *6 (N.D. Fla. Jan. 5, 2012) (granting preliminary injunction in housing case and evaluating *Basco* as a constitutional due process case).

[43] *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011).

[44] *See* 24 C.F.R. § 982.555.

Ms. Goodman does not challenge the constitutional sufficiency of these procedures. Rather, she argues that the Housing Authority did not satisfy these requirements in practice by impermissibly relying on hearsay evidence, by failing to provide her with the opportunity to cross-examine witnesses, by improperly shifting the burden of persuasion onto her, and by basing its decision on insufficient evidence.

The Eleventh Circuit addressed a similar situation in the *Basco* case mentioned above. In that case, the plaintiffs' Section 8 voucher was terminated based on the presence of an unauthorized resident in their home.[45] The plaintiffs challenged the termination at an informal hearing, but the housing authority upheld the termination based solely on two police reports from earlier incidents that occurred at the plaintiffs' property.[46] The first report stated that one of the plaintiffs "gave a sworn statement to the police indicating that his stepdaughter had run way with a man named 'Emanuel Jones,' 'who's staying at the house.'"[47] That statement, however, was not contained in or attached to the report.[48] The second police report listed the alleged unauthorized guest as an eyewitness to a crime, and listed the plaintiffs' home as his address.[49] In addition to these two

---

[45] *Basco*, 514 F.3d at 1179.

[46] *Id.* at 1180.

[47] *Id.* at 1179.

[48] *Id.*

[49] *Id.*

police reports, the hearing officer also stated that he upheld the decision on account of the plaintiffs' inability to prove that the guest did not actually live at the home, as the housing authority's administrative plan established that "the burden of proof that the individual is a visitor rests on the family."[50]

The plaintiffs eventually challenged the decision in court, alleging violations of procedural due process under 24 C.F.R. § 982.555 and the Due Process Clause. The plaintiffs argued that the hearing officer relied on impermissible hearsay evidence, unlawfully shifted the burden onto them, and relied on insufficient evidence. The Eleventh Circuit reversed and remanded the district court's grant of summary judgment after avoiding the hearsay question, but finding in favor of the plaintiffs on their other two arguments.[51] The court held that, when seeking to terminate a Section 8 voucher, due process requires that housing authorities bear "the burden of persuasion and must initially present sufficient evidence to establish a prima facie case" that the termination is justified.[52] The court ultimately found that, assuming the police reports were admissible, they were sufficient to establish that there was a guest in the home, but they said nothing about how long he had been there. Thus, the court found that the termination of the plaintiffs' Section 8 voucher was improper.

---

[50] *Id.*

[51] *Id.* at 1183-84.

[52] *Id.* at 1182.

Like the *Basco* court, there is no need to address Ms. Goodman's hearsay arguments in this case, because the Housing Authority's case falls apart under its own weight. Even assuming *arguendo* that the inspection report were properly admitted, they do not carry the Housing Authority's burden of persuasion.

24 C.F.R. § 982.552(c)(1)(i) states that the Housing Authority is justified in terminating assistance at any time "[i]f the family violates any family obligations under the program," as described in Section 982.551, which includes among other things, the family's duty to maintain certain Housing Quality Standards. The Housing Quality Standards, contained in Section 982.401 *et seq.*, set certain minimum standards that dwelling units must meet in order to participate in the Section 8 program. Included among these standards is the requirement that "each dwelling unit must have at least one battery-operated or hard-wired smoke detector, in proper operating condition, on each level of the dwelling unit . . . ."[53] Responsibilities for maintaining HQS are divided between owners and families. Owners are generally responsible for "maintain[ing] the unit in accordance with HQS," while families are responsible for, among other things, any breach of the HQS that is "*caused by* . . . any member of the household or guest damag[ing] the dwelling unit or premises (damages beyond

---

[53] 24 C.F.R. § 982.401(n)(1).

normal wear and tear)."[54] If a breach of the HQS "*caused by* the family is life threatening, the family must correct the defect within no more than 24 hours."[55]

In this case, the Housing Authority terminated Ms. Goodman's Section 8 voucher for HQS violations for damage beyond normal wear and tear. The alleged damages "caused by" Ms. Goodman and her family were the four outstanding "tenant charge" items noted in the October 2016 inspection report, namely: a broken kitchen cabinet, a missing handle and broken glass on the storm door, and the "24-hour emergency repair" of a smoke detector that still needed a new battery.[56]

Assuming that these are violations of HQS – the non-operable smoke detector most likely is, though the others are questionable – there is absolutely no evidence in the record that any of these items were caused by Ms. Goodman. Indeed, the Hearing Officer never even addressed this question in her decision, stating during her deposition that "[i]t was never any question of whether she damaged it . . . It was an outstanding item. I didn't look at how it was damaged or if she damaged it. It was an outstanding tenant item."[57] Nor did she even ask whether the items listed as "tenant charges" were actually the tenant's responsibility, as she testified "I cannot answer why [a "tenant charge"] is a

---

[54] *Id.* at § 982.404(b)(1) (emphasis added).

[55] *Id.* (emphasis added).

[56] Pl.'s SMF ¶ 41.

[57] Hill Dep. 64:2-4, 16-19.

tenant responsibility. I'll just adhere to the items that are listed under tenant responsibility. That's an HQS question."[58]

The problem with these statements is that the entire basis of the Housing Authority's authorization to terminate a Section 8 voucher on "damage beyond wear and tear" grounds depends specifically on whether the *tenant* caused the damage.[59] Without a determination that Ms. Goodman or her family caused the smoke detector to not work, or the drawer to be broken, the Housing Authority cannot say it had authority to terminate her from the program on these grounds.

Had the Hearing Officer even bothered to address this question, she would have seen that the evidence on the record suggests just the opposite. Ms. Goodman testified that the storm door had always been broken since she moved in,[60] and that the kitchen drawer was broken as a result of installation defects on the part of the owner.[61] Furthermore, Ms. Goodman replaced the battery in the remaining inoperable smoke detector in front of the inspector, and it still did not work.[62] The only witness who could have plausibly offered evidence to the contrary was Kentrye Cornelious, the Housing Choice Voucher Compliance

---

[58] *Id.* at 57:11-14.

[59] 24 C.F.R. § 982.404(b)(1) (stating that the family is responsible for a breach of the HQS "caused by" a member of the household damaging the premises).

[60] *Id.* at ¶¶ 64-65.

[61] *Id.* at ¶ 14.

[62] *Id.* at ¶ 44.

Officer, who had no firsthand knowledge of the Property. And the inspection reports which listed these items as "tenant's charges" never articulating why they were Ms. Goodman's responsibility.

The Court, therefore, finds that the Housing Authority erred in terminating Ms. Goodman's Section 8 housing voucher by relying on evidence that was "legally insufficient to establish a prima facie case" that Ms. Goodman caused the damage to the Property.[63] Consequently, Ms. Goodman is entitled to summary judgment on her Fourteenth Amendment due process claim, as well as her claim under the Due Process Clause of the Georgia Constitution.[64] However, because the Housing Authority has testified numerous times that it based its decision solely on the damage to the Property, and not on the missed inspection, the Defendants are entitled to summary judgment on the Plaintiff's fourth claim for discrimination on the basis of disability.[65]

---

[63] *Basco*, 514 F.3d at 1183.

[64] *See Cherokee Cty. v. Greater Atlanta Homebuilders Ass'n, Inc.*, 255 Ga. App. 764, 767 n.1 (2002) (stating that "[t]he due process guarantees" under the United States and Georgia Constitutions "are substantively identical.").

[65] The Housing Authority initially stated that it terminated Ms. Goodman for (1) missing her re-inspection, and (2) for damage beyond normal wear and tear. The Hearing Officer, however, upheld this decision solely on the grounds that Ms. Goodman had an opportunity to fix the items mentioned in the inspection reports, but failed to do so, without citing any particular regulation. The Housing Authority has repeatedly asserted that it based its final decision solely on the repair allegation; it excused the missed inspection because Ms. Goodman's son was hospitalized. *See* Hill Dep. 26:8-18; Cornelious Dep. 51:15-24.

## IV. Conclusion

For the reasons stated above, the Plaintiff's Motion for Partial Summary Judgment [Doc. 72] is GRANTED and the Defendants' Motion for Summary Judgment [Doc. 73] is GRANTED in part and DENIED in part.

SO ORDERED, this 17 day of August, 2018.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge